CLARK H. PICKREL, APPELLANT, V.
CRISTY K. PICKREL, APPELLEE.

717 N.W.2d 479

Filed June 6, 2006.   No. A-04-1150.

Tracy A. Follmer, of Keating, O'Gara, Davis & Nedved, P.C., for appellant.

Chris F. Blomenberg and Mary Kay Hansen, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., for appellee.

SIEVERS, MOORE, and CASSEL, Judges.

MOORE, Judge.

## INTRODUCTION

Clark H. Pickrel appeals from a decree of dissolution entered by the district court for York County, which decree dissolved his marriage to Cristy K. Pickrel and ordered Clark to pay child support. For the reasons that follow, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

Clark and Cristy were married on June 3, 1988, and three children were born to their marriage: a son born February 5,

1993, a daughter born December 9, 1994, and a daughter born November 11, 1997. Cristy is an architect and, at the time of trial, was employed with a firm in Lincoln, earning $72,500 a year. Cristy's firm also supplied her with a company car and reimbursed her expenses for commuting from York, where the family lived, to Lincoln each workday.

Clark received a bachelor of science degree in agriculture in 1988 and thereafter began farming. In 1991, Clark incorporated his farming operation as "Pickrel, Inc." Clark is the president of Pickrel, Inc., and is also its sole shareholder and employee. In 2001, Clark's father retired, and in 2002, Clark began farming his father's land under an annual cash rent arrangement. The addition of Clark's father's land significantly increased the number of acres Clark farmed, from 360 to approximately 760.

Clark also has received education in financial matters. In 1988, Clark received a "Series 7" stockbrokerage license, and he had three clients in this capacity from 1988 until the early 1990's. Clark no longer holds the Series 7 license. Clark also took some classes in certified financial planning for educational purposes, but did not take the final examination in order to become certified. Clark handled the family's finances and investments throughout the marriage, and Cristy testified that he did a good job managing the family's investments. At the time of trial, the value of the parties' investment accounts was at least $450,000.

On April 1, 2003, Clark filed a petition for legal separation in the district court for York County. On June 9, Clark filed an amended petition for dissolution of marriage.

Prior to trial, the parties settled issues of child custody and property division. The parties agreed to share joint legal and physical custody of their three children. As part of the property settlement, Clark received the parties' investment accounts and was required to pay Cristy a sum of $200,000 as a judgment to equalize the division of assets and debts. Clark testified that he would make this payment by liquidating some of the investment accounts. The agreement did not provide for spousal support for either party.

Trial was held on June 3, 2004, and the main issue was child support. Cristy's wage stub from her employer was received into

evidence. Clark offered a proposed child support calculation which was admitted into evidence. Clark based his "monthly income" for child support purposes solely on Pickrel, Inc.'s income. Pickrel, Inc.'s income from 1998 to 2002 was detailed on the first page of the proposed calculation. Clark calculated each year's income by taking the "Taxable Income" value and adding to it the "Depreciation" value from the relevant year's corporate tax return. The income from each of the 5 years was then averaged, and that amount was divided by 12, for a proposed monthly income of $1,416. The second page of the proposed calculation was entitled "Child Support Calculator" and appeared to be a combination of worksheets 1 and 3 from the Nebraska Child Support Guidelines. Clark used $1,416 as his proposed gross monthly income and $6,042 as Cristy's, which resulted in a child support obligation of Clark in the sum of $173.16 monthly for three children, under a joint custody calculation, prior to any adjustment under paragraph R of the guidelines. Clark's monthly income as shown on the proposed calculation did not include any earnings from his investment accounts. Neither did it include his salary from the corporation, which ranged from $2,700 to $3,480 between 1998 and 2002. This salary, as well as other personal expenses that were paid for by the corporation, was deducted from the total corporate income to arrive at the taxable income figures utilized by Clark. Cristy did not offer into evidence any proposed child support calculations.

Additional evidence was adduced in an effort to show Clark's earning capacity. This evidence included a loan application completed by Clark in 2003 showing his monthly income as $7,000 and an investment account information document from 2003 showing annual income (from all sources) of "$50,000 - 99,999." In addition, testimony from a vocational rehabilitation consultant indicated that Clark would have employment opportunities in two areas: as a farm manager and as a financial securities sales representative, with average earnings in Nebraska of $48,000 and $66,000 to $88,000, respectively.

In its dissolution decree entered September 10, 2004, the court approved the parties' agreements with respect to child custody and property division. Clark was ordered to pay child support in the following amounts: $338 per month for the three minor

children, $285 per month when two of the children were minors, and $194 per month for one minor child.

Incorporated into the dissolution decree was a separate "Journal Entry of Decision on Contested Issues" which detailed the court's child support calculations. A majority of the document was devoted to calculating Clark's monthly income, as the court noted that determining Clark's monthly income for purposes of child support "presents difficulties." The court's determination of Cristy's monthly income was relatively simple. Cristy's monthly income was calculated by adding two things: her gross monthly income of $6,042 and the employment benefit she received each month—the company car and reimbursement of commuting expenses—which benefit the court calculated to be $98. This resulted in a total gross income of $6,140 per month for Cristy.

To determine Clark's monthly income, the court stated, it needed to "construct a reasonably predictable earning capacity," which would require the court to "look past the corporate form and into the reality of Clark's financial situation." The court used a 5-year average to compute Clark's income.

To determine Clark's income for each of the 5 years, the court looked to Pickrel, Inc.'s corporate tax returns. The court first added (1) Clark's salary from Pickrel, Inc.; (2) the retained earnings of the corporation; and (3) the depreciation claimed on the corporation's tax return, finding that Clark failed to carry the burden of establishing an entitlement to a depreciation deduction under paragraph D of the child support guidelines. After this, the corporate taxable income or loss was either added or subtracted. Next, an annual amount of $23,000 was added for telephone, utilities, and other household expenses paid for by the corporation, an amount which Clark had apparently conceded in his written submission to the court following trial. Finally, a $60,000 amount was added for year 2002 because Clark had deducted the rent paid to his father for farmland twice that year, one of which deductions was for an advance payment of the 2003 cash rent. The court then averaged the 5 years' income to determine an average yearly income figure. Next, the court added $19,250 to this figure as "projected investment income." The court then divided this final amount by 12 to

determine a monthly income of $11,570. A summary of the court's calculation follows:

| Year | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| Salary | $ 2,800 | $ 2,700 | $ 3,120 | $ 3,320 | $ 3,480 |
| Retained earnings | 43,786 | 90,647 | 68,010 | 54,424 | 53,098 |
| Depreciation | 12,589 | 30,450 | 22,764 | 23,430 | 30,198 |
| | $59,175 | $123,797 | $93,894 | $81,174 | $ 86,776 |
| Subtract or add corp. taxable income | (2,278*) | 31,829 | (17,627) | (16,231) | (17,557) |
| | $56,897 | $155,626 | $76,267 | $64,943 | $ 69,219 |
| Household expenses | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 |
| | $79,897 | $178,626 | $99,267 | $87,943 | $ 92,219 |
| 2002 duplicate rent | | | | | 60,000 |
| | | | | | $152,219 |

5-year income: $79,897 + $178,626 + $99,267 + $87,943 + $152,219 = $597,952

5-year average income: $597,952 ÷ 5 = $119,590

Add in $19,250 projected investment income: $119,590 + $19,250 = $138,840

Reduced to monthly figure: $138,840 ÷ 12 = $11,570

(*This figure is an error. The 1998 return shows –$14,867 for the taxable income loss.)

Clark timely appealed from the portion of the dissolution decree which ordered him to pay child support.

## ASSIGNMENTS OF ERROR

Clark asserts that the district court abused its discretion in the following respects: (1) by including the retained earnings of Pickrel, Inc., as income of Clark in calculating his child support obligations when there was no evidence presented that the retained earnings were "excessive or inappropriate" and (2) in failing to include projected investment income of Cristy in calculating her child support obligation when the projected investment income of Clark was included despite the fact that the assets that would produce the projected income were divided between them.

## STANDARD OF REVIEW

The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial

court will be affirmed in the absence of an abuse of discretion. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

## ANALYSIS
### CORPORATE RETAINED INCOME

Clark claims that the district court abused its discretion when it included the retained earnings of Pickrel, Inc., as income of Clark in calculating his child support obligation because there was no evidence that the earnings were "excessive or inappropriate." Clark argues that paragraph D of the Nebraska Child Support Guidelines provides for the inclusion of retained earnings of a corporation only when there is evidence that the earnings were " 'excessive or inappropriate.' " (Emphasis omitted.) Brief for appellant at 5. Clark claims that no evidence of this excessiveness or inappropriateness was presented at trial and that therefore, it was error for the court to include the retained earnings in calculating Clark's monthly income. The relevant portion of the child support guidelines is as follows:

> D. Total Monthly Income. This is income of both parties derived from all sources, except all means-tested public assistance benefits which includes any earned income tax credit and payments received for children of prior marriages. This would include income that could be acquired by the parties through reasonable efforts. *For instance, a court may consider as income the retained earnings in a closely-held corporation of which a party is a shareholder if the earnings appear excessive or inappropriate.*

(Emphasis supplied.)

The evidence in this case concerning the retained earnings is very scant. The corporate tax returns indicate the amount of retained earnings for the years 1998 through 2002, and Clark's testimony confirmed that earnings had been retained in the corporation from time to time. There was no testimony given as to

whether the amount of retained earnings in this corporation was excessive or inappropriate. The retained earnings shown in the corporate tax returns are found on "Schedule L," which is a balance sheet showing total assets together with total liabilities and shareholders' equity. Retained earnings are included on the liabilities and equity portion of the balance sheet. The balance sheet shows the amount of retained earnings at the beginning and the end of each tax year. We summarize the following pertinent information from the 1998 through 2002 returns:

|  | Total assets | Loans/ mortgages | *Retained earnings beginning of year* | Retained earnings end of year |
|---|---|---|---|---|
| 1998 | $252,557 | $160,781 | *$58,699* | $43,786 |
| 1999 | 293,748 | 155,111 | *43,786* | 90,647 |
| 2000 | 354,611 | 238,611 | *90,647* | 68,010 |
| 2001 | 342,859 | 240,445 | *68,010* | 54,424 |
| 2002 | 358,486 | 257,398 | *54,424* | 53,098 |

A review of the tax returns makes it clear, as the parties conceded at oral argument, that the retained earnings figures are cumulative from year to year, as opposed to new annual amounts as treated by the district court. Thus, it was clearly inappropriate to add the entire amount of retained earnings to each year's income in the child support calculation.

The question still remains as to whether any portions of the retained earnings, or annual fluctuations thereof, should be included in Clark's income. We note that while the retained earnings have fluctuated over the 5-year period in question, both upward and downward, the net effect between the beginning of the tax year in 1998 and the end of the tax year in 2002 is an overall reduction of over $5,000 in the retained earnings shown on the balance sheets. The above information further reveals that the corporation's total assets have generally increased over the 5-year period, as has the debt. Other than in the year 1999, the retained earnings have been between approximately 15 and 19 percent of the value of the total assets. Without further evidence of what is reasonable for a corporation such as Pickrel, Inc., to retain as unappropriated earnings, it is difficult to say from this evidence that the retained earnings in question were excessive or inappropriate.

The district court cited case law from other jurisdictions which have considered retained earnings of a corporation as income for purposes of calculating child support where the party is a majority or sole shareholder and has control over the distribution of profits or where there is no business explanation for the retained earnings other than to increase personal assets at the expense of income. The district court then recited, in support of its inclusion of the corporate retained earnings in Clark's total income, that Clark is the controlling shareholder of Pickrel, Inc., and that he proffered no business purpose, other than increasing personal assets at the expense of current income, for the level of the corporation's retained earnings. However, the district court did not discuss, or make any finding under, the specific language of the Nebraska Child Support Guidelines, which state that retained earnings may be considered income if the earnings appear excessive or inappropriate. See *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003) (error to include passive income from closely held corporation and family partnership in computing mother's income where passive income does not represent income that mother earns or can reasonably expect to earn and where there is no evidence of retained earnings or that any retained earnings are excessive or inappropriate).

Despite the lack of evidence concerning the appropriateness of the retained earnings in this case, we are mindful that the paramount concern and question in determining child support is the best interests of the children. See *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004). The Nebraska Supreme Court has recognized the necessity of taking a flexible approach in determining a person's "income" for purposes of child support, because child support proceedings are, despite the child support guidelines, equitable in nature. See, *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004); *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001). In *Gangwish, supra*, the court was required to determine whether the district court erred in including income from the father's farming corporation for purposes of determining child support. The court noted that a party's income, for purposes of determining child support, does not necessarily stop at the corporate structure of a closely held corporation. The court determined that

under the appropriate factual circumstances, equity may require a trial court to calculate a party's income by looking through the legal structure of a closely held corporation of which the party is a shareholder. Stated otherwise, equity may demand that a court consider as income the earnings of a closely held corporation of which a party is a shareholder.

*Id.* at 912, 678 N.W.2d at 514. The court went on to summarize the facts of the case which weighed in favor of looking to the corporation to determine the father's income, including that the corporation paid for many of the parties' living expenses, that the parties were the sole owners of the corporation, that the father was in sole control of the corporation's financial decisions, and that the father was paid a low salary while building value in the corporation. The court stated that in cases such as these, a trial court should not only add " 'in-kind' " benefits derived from an employer to a party's income, but also take into consideration the party's actual earning capacity. *Id.* at 913, 678 N.W.2d at 514. See Nebraska Child Support Guidelines, paragraph D. See, also, *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001) (noting importance of determining party's actual earning capacity in child support cases). The court in *Gangwish* also noted that the need to examine a party's earning capacity is " 'especially true when it appears that the parent is capable of earning more income than is presently being earned.' " 267 Neb. at 913, 678 N.W.2d at 515, quoting *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

The *Gangwish* court recognized that while building equity in a corporation in lieu of taking salary can be a wise business decision, the " 'support of one's children is a fundamental obligation which takes precedence over almost everything else.' " 267 Neb. at 913, 678 N.W.2d at 515, quoting *Rauch, supra*. Thus, the court concluded that it would simply be inequitable for the children to suffer because of the father's decision to build value in the corporation by depressing his salary. Because the Supreme Court was unable to determine how the trial court arrived at its income figure for the father, it remanded for a new determination of the father's income, holding that the trial court was within its discretion to look to the corporation to determine the father's income. The trial court was instructed to consider, in

addition to looking at the father's reported income, (1) the in-kind benefits, e.g., perquisites, that the father received from the corporation; (2) the corporation's depreciation expenses; and (3) with due regard for business realities, the amount of the corporation's income which should equitably have been attributed to the father.

The court in *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004), did not specifically address "retained earnings" of the corporation, but, rather, talked only of the income or earnings of the corporation and the appropriateness of considering corporate income (plus depreciation expenses) in setting child support. Neither did the *Gangwish* court refer to that section of paragraph D of the guidelines which discusses retained earnings. In the present case, Clark included the taxable corporate income, plus the depreciation expense, of Pickrel, Inc., for the 5 years from 1998 through 2002 in estimating his average annual and monthly income, which inclusion appears to be consistent with the conclusion from *Gangwish*. Likewise, Clark apparently conceded after trial that it was appropriate to consider the value of the "in-kind" contributions from the corporation, which the district court valued at $23,000 annually, and Clark does not assert error regarding such consideration by the court. However, Clark failed to include the salary, albeit relatively minor in amount, that he received from the corporation, which should be included in the equation, as recognized by the district court. We conclude that under the facts of this case, it is appropriate to include in Clark's income his annual salary; the taxable income from Pickrel, Inc., together with the depreciation expenses; and the value of the "in-kind" contributions from the corporation received by Clark. In addition, no error was asserted, and we find none, with regard to the district court's addition of the duplicate rent paid in 2002. Because there was no evidence from which to conclude that the retained earnings of Pickrel, Inc., were excessive or inappropriate, we determine that it was an abuse of discretion to include the retained earnings in the calculation of Clark's income.

In summary, we affirm the district court's calculation of Clark's earning capacity and total monthly income, with the exception of the inclusion of the retained earnings of Pickrel, Inc., and as corrected for the misstated 1998 corporate income or loss

amount noted above. We determine Clark's annual income (prior to consideration of investment income) as follows:

|  | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| Salary | $ 2,800 | $ 2,700 | $ 3,120 | $ 3,320 | $ 3,480 |
| Corp. tax. income | (14,867) | 31,829 | (17,627) | (16,231) | (17,557) |
| Depreciation | 12,589 | 30,450 | 22,764 | 23,430 | 30,198 |
| "In-kind" | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 |
| Duplication of rent expense |  |  |  |  | 60,000 |
| TOTAL | $ 23,522 | $ 87,979 | $ 31,257 | $ 33,519 | $ 99,121 |

Total for 5 years: $275,398

Average: $275,398 ÷ 5 = $55,080 ÷ 12 = $4,590 monthly gross income

### PROJECTED INVESTMENT INCOME

Clark claims that the court abused its discretion when it failed to include projected investment income of Cristy in calculating her child support obligations when the projected investment income of Clark was included despite the fact that the assets that would produce the projected income were divided between them. In other words, Clark claims that it was error for the court to include projected investment earnings in calculating his monthly income, but not include the same for Cristy when calculating her monthly income.

In determining Clark's monthly income for purposes of child support, the court included $19,250 as "projected investment income." This amount was calculated by taking the value of the investments Clark would have after paying Cristy, which the court determined to be $275,000, multiplied by the value that Clark testified he expected to receive on his investments, 7 percent. The court then added this amount to Clark's average annual income before dividing the entire amount by 12 to arrive at an average monthly income.

The court explained its decision to attribute projected investment income to Clark but not Cristy as follows:

> Clark speculated at trial that Cristy would invest the funds that she is receiving in the property division and that she would also earn income from her investments. However, this money is not in hand and there is no evidence setting forth how Cristy will use the funds. It is speculative, at best, what

will happen to Cristy's funds. We know Clark is good at investment; we have no track record upon which we may assess Cristy's investment skills.

Clark claims that if the court included projected investment income in calculating his monthly income, the court should have added the same to Cristy's monthly income as well, based on the $200,000 judgment she would receive under the property settlement agreement. Cristy did not testify at trial as to how she planned to use the $200,000 payment. Clark testified that if Cristy used the money as an investment, she could make as good a rate of return as he could, but he also testified that he did not know how Cristy would use the money or what expenses or obligations she might have to meet with those funds.

■ Our de novo review indicates that it was an abuse of discretion for the court to include projected investment income in calculating Clark's monthly income, but not to do the same in calculating Cristy's monthly income. The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective incomes. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). Under the property settlement agreement, Cristy is to receive a $200,000 payment from Clark "within 60 days," whereafter interest will accrue at the judgment rate. However, we do not believe that it is reasonable to attribute to Cristy's judgment a rate of return similar to the one the court applied to Clark's investment, given the apparent disparity in their investment expertise. Rather, pursuant to Neb. Rev. Stat. § 27-201 (Reissue 1995), we determine that a reasonable rate of return to attribute to Cristy would be that of an insured, interest-bearing instrument, which we find to be 4 percent. Therefore, assuming a 4-percent return on $200,000, Cristy would earn $8,000 a year, which would be approximately $667 a month. When this amount is added to the court's previous determination of her monthly income, $6,140, Cristy's total gross monthly income for child support purposes is $6,807. Likewise, we add the sum of $1,604 ($19,250 ÷ 12) to Clark's monthly income for a total gross monthly income of $6,194.

As a result of our conclusion that the district court erred in including the retained earnings of Pickrel, Inc., in Clark's total

monthly income and in calculating Cristy's total monthly income, we reverse the district court's order of child support and remand for a determination of child support based upon a gross total monthly income for Cristy of $6,807 and for Clark of $6,194.

## CONCLUSION

We find that the district court abused its discretion in the determination of Clark's earning capacity for purposes of child support. We also find that the court abused its discretion in determining Cristy's monthly income for purposes of child support. We reverse the court's decision in both respects and remand the cause with directions for a determination of child support consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.