file a motion for attorney fees could cure that defect by filing a petition for further review, wait for the denial, and then file a motion for attorney fees. Allowing this application would encourage parties who were successful on appeal, but who failed to timely file for attorney fees, to seek further review of the minutest issue in the Nebraska Supreme Court simply so they could request attorney fees.

## CONCLUSION

Joshua failed to timely file his motion for attorney fees when he failed to file it within 10 days from the date on which we released the opinion in *State on behalf of Keegan M. v. Joshua M., supra*. We therefore deny his motion.

MOTION FOR ATTORNEY FEES DENIED.

---

NANCI MOLINA, INDIVIDUALLY AND AS NEXT FRIEND
OF AGUSTIN BUSTAMANTE-MOLINA, APPELLEE, V.
AGUSTIN SALGADO-BUSTAMANTE, APPELLANT.

___ N.W.2d ___

Filed July 30, 2013.    No. A-12-607.

1.  **Appeal and Error.** The construction of a mandate issued by an appellate court presents a question of law.
2.  **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.
3.  **Actions: Paternity: Child Support: Equity.** While a paternity action is one at law, the award of child support in such an action is equitable in nature.
4.  **Child Support: Appeal and Error.** The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion.
5.  **Motions for New Trial: Appeal and Error.** A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.
6.  **Judges: Judgments: Appeal and Error: Words and Phrases.** A judicial abuse of discretion, warranting reversal of a trial court decision on appeal, requires that the reasons or rulings of a trial court be clearly untenable, unfairly depriving a litigant of a substantial right and just result.
7.  **Child Support: Rules of the Supreme Court.** The main principle behind the child support guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes.

8. **Child Support: Judgments.** Nebraska law requires a trial court to attach the necessary child support worksheets to a child support order.

9. **Appeal and Error: Words and Phrases.** In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order.

10. **Courts: Appeal and Error.** After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court.

11. **Child Support: Stipulations.** If the court approves a stipulation which deviates from the child support guidelines, specific findings giving the reason for the deviation must be made.

12. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed in part, and in part reversed and remanded with directions.

John J. Heieck and Matthew Stuart Higgins, of Higgins Law, for appellant.

Catherine Mahern and Michael Wallace, Senior Certified Law Student, of Abrahams Legal Clinic, for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

Agustin Salgado-Bustamante (Agustin) appeals from an order of the district court for Douglas County, Nebraska, that was entered after remand from this court following a previous appeal. The new order increased the amounts of retroactive and prospective child support from those contained in the originally appealed order. The district court also retroactively amended its original award of temporary support. For the reasons set forth below, we affirm the district court's award of retroactive support. However, because the district court went beyond the mandate on remand, we reverse the district court's changes to temporary and prospective support and remand the cause for a new trial.

## I. FACTUAL BACKGROUND

Nanci Molina (Nanci) and Agustin had a child together, Agustin Bustamante-Molina (Agustin Jr.), born in April 2003. The parties, who never married, later separated, and Nanci brought this paternity action. A temporary order was entered on January 6, 2010, which ordered Agustin to pay temporary support in the sum of $360 per month beginning December 1, 2009.

Trial was held on November 30, 2010. The parties stipulated that Agustin was the father of Agustin Jr., that Nanci would have physical possession of Agustin Jr. subject to Agustin's parenting time as set forth in the parties' mediated parenting plan, and that Agustin would be responsible for $360 per month in prospective child support. The only issue tried to the district court was the amount of retroactive child support Agustin owed. At trial, both Nanci and Agustin testified. The record reveals significant conflict between their two accounts regarding the date of their separation, the amount of Nanci's income, and how much Agustin contributed in past support.

Through an interpreter, Nanci testified that she started dating Agustin in 2000 or 2001 and that they broke up in June 2005. According to Nanci, after they separated, Agustin did not have Agustin Jr. with him for extended periods (more than 3 or 4 days) any more than two to three times. She stated this was the case from the time of their separation until this paternity action. Nanci also indicated that due to Agustin's work schedule, he could not have cared for Agustin Jr. during the day while she was at work. She did admit, however, that Agustin's parents would take care of Agustin Jr. before school and bring him home from school in the afternoon if needed.

Nanci also testified regarding her income from 2005 until 2010. Nanci testified that during this entire period, she was employed at a house-cleaning company. Although she did not submit any tax returns or W-2 forms in evidence, Nanci testified that her monthly income was $850 in 2005, $870 in 2006, $900 in 2007, $950 in 2008, $1,005 or $1,010 in 2009, and

$1,200 in 2010. Nanci also stated that she did not receive any additional benefits from her employer.

Nanci indicated that she received little financial assistance from Agustin, despite having asked for support. According to her testimony, she did not receive any support from Agustin in 2005, 2007, 2008, or 2009. She stated that she received $2,000 from Agustin's tax return in 2006. She also affirmatively denied receiving any money from Agustin's 2007 tax return. Nanci agreed that Agustin bought her a car using the money he received from their tax return in 2005. The car cost $2,600.

Agustin disagreed that he and Nanci separated in June 2005. He testified that he discovered Nanci was "cheating on" him in December 2005, but was adamant they did not split up until April 2006, when Nanci moved out of their home. Agustin also stated that he worked an "overnight schedule" from 2005 to September 2010 at a plastics company. Agustin testified that due to his work schedule and its overlap with Nanci's daytime work schedule, he would take care of Agustin Jr. during the day. He claimed to have provided breakfast, lunch, and a shower for the child each day. Agustin testified that this was the arrangement in place from the date of his separation from Nanci in April 2006 until August 2008.

Agustin's tax returns and W-2 forms from 2005 to 2009 were received into evidence. Agustin disputed Nanci's income during that same period. He testified that Nanci was making an average of $360 a week in 2006 and was paid in cash. Agustin also stated that Nanci did not pay taxes during this time period.

Lastly, Agustin testified that he provided far more in financial support than Nanci's testimony revealed. First, Agustin testified that he and Nanci were living together in 2005 and did not separate until April 2006. Agustin also stated that he gave Nanci about $2,500 in support in 2006. Agustin testified that for 2007, he gave Nanci approximately $300 per month ($3,600 for the year) and an additional $3,000 from his tax return. He claimed that he paid Nanci in cash because she did not have a bank account. Agustin testified that he had "no

clue" how much he gave Nanci in 2008, but later testified that he thought he gave her an average of $300 per month from January to August. According to Agustin, this monthly $300 payment was in addition to his care of Agustin Jr. during the schooldays.

Nanci offered into evidence, and the court received, exhibit 1, which consisted of child support calculation worksheets for the years 2005 through 2009, together with a summary page computing the amount of retroactive support that she was requesting from July 1, 2005, to November 30, 2009. As summarized, exhibit 1 shows as follows:

| Year | Monthly Support | Amount |
|------|-----------------|--------|
| 2005 | Monthly support of $368 for 6 months (July to December) | $ 2,208 |
| 2006 | Monthly support of $478 for 12 months | 5,736 |
| 2007 | Monthly support of $587 for 12 months | 7,044 |
| 2008 | Monthly support of $533 for 12 months | 6,396 |
| 2009 | Monthly support of $540 for 11 months (January to November) | 5,940 |
| | TOTAL | $27,324 |

On March 28, 2011, the district court entered an order for paternity, custody, and prospective and retroactive support. The court determined Agustin owed Nanci $25,324 in retroactive support while also awarding Agustin $2,000 in credit for his 2006 support obligation and a $3,600 credit for his 2007 obligation. After subtracting these credits from the total retroactive support owed, the court ordered Agustin to pay $19,724 to Nanci. The order required this arrearage to be paid monthly in $250 increments until satisfied. The court also accepted the parties' stipulation to $360 monthly prospective support, to commence on December 1, 2010. However, neither the order nor the record contains any further explanation to support the amount stipulated.

Only one child support worksheet was attached to the final order. This worksheet appeared to be the 2005 child support worksheet from exhibit 1. There were no other supporting worksheets for any other year relative to the retroactive support or any worksheet supporting the parties' stipulation for the amount of prospective support.

Agustin appealed from this first order, assigning error to the determination of retroactive child support. However, due to the court's failure to attach the necessary worksheets showing the calculations of support, we were not able to address the merits of Agustin's first appeal. In our remanding instructions to the district court, we stated:

> Remanded with directions that the district court prepare an order to include the applicable child support worksheets to show the calculation of retroactive child support. See, Rutherford v. Rutherford, 277 Neb. 301, 761 N.W.2d 922 (2009); Jones v. Belgum, 17 Neb. App. 750, 770 N.W.2d 667 (2009). In addition, the worksheet attached to the order does not appear to reflect the evidence concerning the parties' current income for purposes of setting the prospective child support, and therefore, the order of the district court referenced above shall include the worksheets used to set the prospective child support.

After receiving our remand, the district court revisited its calculations and issued a revised order on March 30, 2012. In that order, the court clarified that it previously determined the amount of retroactive support by using the worksheets and calculations contained in exhibit 1. However, the court discovered that it made a mathematical error in determining the total arrearage to be $25,324 instead of $27,324. Accordingly, it increased the amount of total retroactive support by $2,000 through November 30, 2009. The court further increased the child support arrearage by the amount of $1,043.77 for the temporary period from December 2009 to December 2010, which we discuss in further detail below. After applying the same credits in the original order totaling $5,600, the court determined that the total arrearage was $22,767.77.

In light of our remanding instructions, the district court also reviewed the parties' stipulation for prospective support. Finding no evidence in the record to support a deviation from the Nebraska Child Support Guidelines, the court concluded that the parties' stipulation to $360 in prospective support was not permissible. Using the parties' most recent income information (the 2009 worksheet from exhibit 1), the district

court concluded that Agustin's prospective support should be $540.29 beginning December 1, 2010.

Having concluded that the parties' stipulation to prospective support of $360 per month improperly deviated from the guidelines, the district court likewise modified the temporary child support from $360 to $540.29 per month. The district court then attempted to calculate the additional temporary child support; but, we note that it made further mathematical errors in doing so. First, it incorrectly determined the difference in the monthly amount to be $80.29 instead of $180.29. Then, it multiplied this sum by 13 months for a total of $1,043.77 in additional temporary support. However, the temporary order was in effect from December 1, 2009, through November 30, 2010 (the prospective order began December 1, 2010), which is only 12 months.

On April 6, 2012, Agustin filed a motion for new trial. At the hearing on the motion, Agustin argued that the district court did not have power to increase the amounts of retroactive and prospective support because such action conflicted with our instructions on remand. The district court overruled his motion by an order entered on June 18. Agustin now appeals from the March 30 and June 18 orders.

## II. ASSIGNMENTS OF ERROR

Agustin asserts, combined and reordered, that the district court erred in (1) failing to follow this court's instructions on remand by increasing his child support arrearage and prospective support, (2) denying his motion for new trial, and (3) calculating the amount of retroactive support.

## III. STANDARD OF REVIEW

[1,2] The construction of a mandate issued by an appellate court presents a question of law. *Anderson v. Houston*, 277 Neb. 907, 766 N.W.2d 94 (2009); *Scott v. Khan*, 18 Neb. App. 600, 790 N.W.2d 9 (2010). An appellate court reviews questions of law independently of the lower court's conclusion. *Id*.

[3,4] While a paternity action is one at law, the award of child support in such an action is equitable in nature. *Drew on behalf of Reed v. Reed*, 16 Neb. App. 905, 755 N.W.2d 420

(2008). The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Pickrel v. Pickrel*, 14 Neb. App. 792, 717 N.W.2d 479 (2006).

[5,6] A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). A judicial abuse of discretion, warranting reversal of a trial court decision on appeal, requires that the reasons or rulings of a trial court be clearly untenable, unfairly depriving a litigant of a substantial right and just result. See *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012).

## IV. ANALYSIS

[7] We begin our analysis of the district court's second order setting child support by noting that while a paternity action is one at law, the award of child support in such an action is equitable in nature. *Weaver v. Compton*, 8 Neb. App. 961, 605 N.W.2d 478 (2000). To direct courts in establishing and enforcing child support, the Nebraska Supreme Court has adopted the Nebraska Child Support Guidelines. See Neb. Ct. R. § 4-101(C). The main principle behind the guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. Neb. Ct. R. § 4-201; *Patton, supra*.

[8] The guidelines include various worksheets that are to be used when establishing child support obligations. Nebraska law requires a trial court to attach the necessary child support worksheets to a child support order. *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013); *Rutherford v. Rutherford*, 277 Neb. 301, 761 N.W.2d 922 (2009); *Jones v. Belgum*, 17 Neb. App. 750, 770 N.W.2d 667 (2009). Perhaps the most obvious purpose of this requirement is to ensure that the appellate courts are not left to speculate about the trial court's conclusions. See *Stewart v. Stewart*, 9 Neb. App. 431, 613 N.W.2d 486 (2000). These worksheets show the parties and the

appellate courts that the trial court has "'done the math.'" *Id*. at 434, 613 N.W.2d at 489.

### 1. Did District Court's New Order Violate Instructions on Remand?

In his first assigned error, Agustin asserts that the district court erred on remand by increasing the amount of retroactive support and prospective support in its new order. He contends that our instructions on remand specifically directed the district court to attach worksheets for retroactive and prospective child support to a new order and did not allow the district court to do anything more.

[9,10] In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order. *Mace v. Mace*, 13 Neb. App. 896, 703 N.W.2d 624 (2005). After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. *State ex rel. Wagner v. Gilbane Bldg. Co.*, 280 Neb. 223, 786 N.W.2d 330 (2010); *Scott v. Khan*, 18 Neb. App. 600, 790 N.W.2d 9 (2010). In other words, "'[w]hen a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate.'" *Mace*, 13 Neb. App. at 905, 703 N.W.2d at 633 (quoting *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998)).

In the present case, our instructions on remand directed the district court to prepare an order which included the applicable worksheets to show its calculations of retroactive and prospective child support. The resulting order contained the necessary worksheets showing these calculations. While preparing the order and worksheets, however, the district court concluded that its original awards for retroactive, temporary, and prospective support were incorrect and changed each award. We separately address each revision.

### (a) Retroactive Support

In its original order setting retroactive and prospective child support, the district court concluded Agustin owed Nanci $19,724 in retroactive support through November 2009, prior to the commencement of the temporary support on December 1. The court arrived at this number after subtracting Agustin's awarded credits of $5,600 from the total arrearage of $25,324. However, upon remand, the district court, after clarifying that it was using exhibit 1 in calculating temporary support, discovered that the total arrearage should have been $27,324 instead of $25,324. The court thus corrected the amount of retroactive support by including an additional $2,000.

Considering the purpose of the worksheet attachment rule and our instructions on remand, we conclude that the district court's mathematical correction to the retroactive support did not violate our mandate. The language of the mandate pertaining to retroactive support stated that the cause was remanded "with directions that the district court prepare an order to include the applicable child support worksheets to show the calculation of retroactive child support." In attempting to comply with our mandate and show us how it "did the math," the court discovered and corrected its original mathematical error. Correcting this error ensured that the retroactive support award corresponded with the original decision in this case to adopt the worksheets and calculations in exhibit 1. In such a circumstance, this change to the retroactive support did not exceed the scope of our previous mandate. We find no error in the district court's increase in the retroactive support by the sum of $2,000 to correct its mathematical mistake.

### (b) Temporary Support

We reach a different conclusion with respect to the district court's amendment of the prior temporary support award. The district court's decision to increase the amount of temporary child support from $360 to $540.29 and retroactively apply the resulting difference to Agustin's total arrearage was not a mere mathematical correction. Further, there was no assignment of error regarding the temporary child support order in

the first appeal and thus no direction to the district court to attach the supporting worksheet for the temporary child support order. It was error for the court to increase the amount of temporary support, as such order clearly exceeded the directions and scope of our mandate. Therefore, we reverse this portion of the district court's order that increased the child support arrearage by $1,043.77.

### (c) Prospective Support

[11] The parties stipulated at trial to prospective child support of $360 per month, and the district court approved the stipulation in its original order. Stipulated agreements of child support are required to be reviewed against the guidelines. If the court approves a stipulation which deviates from the guidelines, specific findings giving the reason for the deviation must be made. See *Lucero v. Lucero*, 16 Neb. App. 706, 750 N.W.2d 377 (2008). Because the 2005 worksheet attached to the order did not appear to reflect the evidence concerning the parties' current incomes, we remanded the cause to the district court with directions to attach the worksheets it used to set prospective support.

When the district court received our remand, it reviewed the parties' stipulation and concluded that the stipulated support deviated from the guidelines, as it was not consistent with the parties' current incomes or the most recent worksheet contained in exhibit 1. As the parties did not adduce evidence to explain this deviation at trial, the court concluded that the deviation was impermissible and increased Agustin's prospective support from $360 per month to $540.29 per month based on exhibit 1.

We conclude this increase in prospective support also exceeded the scope of our mandate. Our mandate required the district court to include the worksheets used to set the prospective child support in its original order. It did not permit further scrutinizing of the stipulation, particularly without giving the parties an opportunity to present evidence to support any deviation from the guidelines. Therefore, we also reverse this portion of the district court's order increasing the prospective child support to $540.29 per month.

### 2. Should District Court
### Have Granted Motion
### for New Trial?

In his motion for new trial, Agustin argued that the district court did not have authority to make changes to its previous awards. He contended that he should have been granted a new trial to challenge the factual bases for these increases. The district court denied his motion, noting during the corresponding hearing that it had authority to make the changes that it did. Now, Agustin argues that he was deprived of the substantial right to challenge these changes.

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). A judicial abuse of discretion, warranting reversal of a trial court decision on appeal, requires that the reasons or rulings of a trial court be clearly untenable, unfairly depriving a litigant of a substantial right and just result. See *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012).

As we determined above, the district court did not exceed the scope of our mandate with respect to the mathematical correction to reflect the amount of retroactive support, through November 30, 2009, in the net sum of $21,724. As such, Agustin was not deprived of a substantial right and was not entitled to a new trial on this issue. On the other hand, the district court did exceed the scope of our mandate in increasing the amount of the temporary and prospective support. When the district court discovered on remand that the prospective and temporary support awards may have deviated from the guidelines, it modified the support without giving the parties an opportunity to present evidence regarding the deviation. Simply changing the amounts in the new order to conform to the guidelines, without giving Agustin an opportunity to address the deviation, deprived Agustin of a substantial right. Therefore, we conclude the district court abused its discretion when it denied a new trial on these issues.

### 3. Did District Court Err in
### Determining Amount of
### Retroactive Support?

In his remaining assignments of error, Agustin argues that the district court incorrectly determined the amount of retroactive support. Agustin first argues that the retroactive support should not have begun in June 2005. He contends that the evidence supported his testimony that he and Nanci did not separate until April 2006. We conclude that this argument is without merit.

As stated in the factual background above, Nanci and Agustin gave conflicting testimony relating to the end of their relationship and the resulting care of Agustin Jr. after their separation. Nanci testified that they separated in June 2005 and that she cared for Agustin Jr. after the separation. Agustin, on the other hand, testified that he did not separate from Nanci until April 2006. He also stated that he and Nanci jointly cared for Agustin Jr. from April 2006 until August 2008. According to Agustin's testimony, he would care for Agustin Jr. during the day while Nanci was at work and Nanci would have Agustin Jr. the remainder of the day. Nanci testified, however, that this joint care rarely occurred.

[12] Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012). Given the obvious conflict in the parties' testimony regarding the issues involved in the court's determination of retroactive support, we give weight to the fact that the district court heard and observed this testimony. Therefore, we conclude the district court did not abuse its discretion when adopting Nanci's testimony that the parties separated in June 2005.

Agustin next argues that the district court failed to give him credit for all of the support he previously provided for Agustin Jr. We likewise find this argument to be without merit.

The testimony at trial demonstrates conflicting views regarding the amount of prior support Agustin contributed. Nanci testified that Agustin gave her only $2,000 in 2006 from his tax return and denied receiving any money from Agustin from his 2007 tax return. Nanci acknowledged that Agustin gave her a car that cost $2,600. However, the record is unclear whether this car was given to her in 2005 or 2006, or before or after the parties' separation. Agustin testified that he gave Nanci about $2,500 in 2006, monthly payments totaling $3,600 in 2007, and $3,000 from his tax return in 2007. Agustin testified that he had "no clue" how much money he gave Nanci in 2008, but later said he gave her $300 per month through August 2008. Nanci denied receiving monthly payments from Agustin and testified that arguments resulted whenever she would ask Agustin for child support.

In its order of March 30, 2012, the court further explained its determination of credits and indicated that it awarded credit of $2,000 for 2006 based upon Nanci's testimony and of $3,600 for 2007 based upon Agustin's testimony. Based upon our review of the record and giving weight to the fact that the trial judge heard and observed the witnesses, we can find no abuse of discretion in the amount of credit awarded to Agustin toward the retroactive support.

## V. CONCLUSION

We conclude that the district court did not violate our mandate when it corrected its mathematical error related to the retroactive support through November 30, 2009, and did not err in its determination of the commencement date of or credits toward retroactive support. We affirm that portion of the order which determined that Agustin owes $21,724 in retroactive support through November 30, 2009. However, the mandate did not permit the district court to amend its determinations regarding the amounts of temporary or prospective support. Therefore, we reverse those portions of the March 30, 2012, order and remand the cause with directions that the district court conduct a new trial to allow the parties to present evidence on the issues of temporary support

from December 1, 2009, through November 30, 2010, and prospective support from December 1, 2010, to the time of the new trial.

Affirmed in part, and in part reversed
and remanded with directions.

———————

Diane S. Glantz, appellant, v.
Michelle Daniel, appellee.
___ N.W.2d ___

Filed July 30, 2013.    No. A-12-673.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court resolves independently of the trial court.
2. **Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record.
3. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
4. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.
5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues.
6. **Courts: Judgments.** In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.
7. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.
8. **Moot Question.** As a general rule, a moot case is subject to summary dismissal.
9. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.
10. ____: ____. When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question