IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

HORNER V. HORNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TAMARA E. HORNER, APPELLANT AND CROSS-APPELLEE,
V.
ROBERT A. HORNER, APPELLEE AND CROSS-APPELLANT,

Filed February 4, 2014.    No. A-12-1043.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Paul J. Gardner, Kevin J. McCoy, and Aaron F. Smeall, of Smith, Gardner, Slusky, Lazer, Pohren & Rogers, L.L.P., for appellant.

Jeffrey A. Wagner and Liam K. Meehan, of Schirber & Wagner, L.L.P., for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Tamara E. Horner appeals and Robert A. Horner cross-appeals from the decision of the district court for Douglas County dissolving the parties' marriage; dividing marital property; awarding custody of the parties' children; and ordering Robert to pay child support, alimony, and $1,000 toward Tamara's attorney fees. Tamara argues that the district court erred in calculating Robert's income for the purposes of child support and alimony, failing to show how it calculated Robert's income, and failing to award her additional attorney fees and alimony. We find no merit to Tamara's arguments on appeal and therefore affirm the district court's order.

Robert argues on cross-appeal that the district court erred in awarding the family home to Tamara, because she had no marital interest in the home. Because the family home has been sold, we conclude this issue is moot and dismiss Robert's cross-appeal.

BACKGROUND

Robert and Tamara were married in 1996. Three children were born during the marriage: the first in 1997, the second in 2000, and the third in 2002. At the time of their marriage, Robert and Tamara lived in a home on "Y" Street that Robert had purchased prior to the marriage and paid off in 1994. The "Y" Street home was sold in 2004, and $74,653.31 from the sale was put toward the purchase of a new home on Karen Street. Initially, the home was titled in both Robert's and Tamara's names, but after the property was refinanced in 2006, it was titled solely in Robert's name. The Karen Street property was the family home until the parties separated in 2008 and Robert moved out. Robert testified at trial that he believed the value of the Karen Street residence was between $160,000 and $175,000. At that time, the mortgage on the home had a balance of $140,714.65.

Tamara did not work outside the home during the marriage after the children were born. At the time of trial, she had obtained employment as a kitchen helper at a school and was earning $11.47 per hour.

A majority of the evidence presented at trial surrounded Robert's income. Robert and Tamara formed a consulting business, CFJ, Inc., in 1999 or 2000. For the first several years of its existence, CFJ had numerous clients, but it eventually lost all of its business except for Heavy Duty Specialists (HDS). HDS is a company owned by Robert's parents.

Initially, HDS was paying Robert $3,750 every 2 weeks for consulting work. At some point, HDS decreased the amount it was paying Robert to $3,000 every 2 weeks, but the record is unclear as to when this occurred. As of February 2008, however, HDS was still paying the higher amount.

In late 2010, Robert dissolved CFJ and started a new consulting company called Track Maintenance Technologies, Inc. (TMT). At the time of trial, HDS remained TMT's only customer, and Robert testified that HDS was paying TMT $3,000 every 2 weeks.

In addition to the biweekly salary, HDS also provided other benefits to Robert and Tamara while they were married. These benefits included paying all of the expenses for both of the couple's vehicles, including payments, licensing fees, insurance, and gasoline; health insurance; life insurance; cable television and telephone; medical bills; house cleaning services; lawn care and snow removal services; a health club membership; private school tuition for the children; $800 per month in groceries; and the mortgage on the Karen Street residence.

At trial, Robert's father testified that HDS was still providing some additional benefits to Robert and the children. According to him, HDS was continuing to provide life insurance, health insurance, vehicle expenses, health care copayments, and cell phones for Robert and the children.

After trial, the district court entered the dissolution decree dated October 24, 2011, and filed on October 25, 2011. The court dissolved Robert and Tamara's marriage and awarded custody of the oldest child to Robert and the younger children to Tamara. Robert was ordered to pay child support of $1,068.71 per month. The child support award was based on gross earnings of Tamara of $1,000 per month and Robert of $7,400 per month. The court found that the Karen Street residence had a fair market value of $160,000, with an encumbrance of $140,000, and

awarded both the house and the debt to Tamara. The court also ordered Robert to pay attorney fees and costs to Tamara's attorney in the amount of $1,000 for a prior contempt action.

Robert filed a motion to alter or amend on November 3, 2011. He claimed the court failed to award all of the parties' personal property and failed to return certain property to the parties' oldest child. He also asserted that the court failed to credit him for premarital funds used to purchase the Karen Street home and asked that he be released from liability for the home's mortgage. Finally, Robert argued that the court inaccurately calculated his income for the purpose of child support.

After a hearing on Robert's motion, the court entered an order on July 11, 2012. The court divided the remainder of the parties' property and ordered Tamara to return certain property to the oldest child. The court also ordered Tamara to sell the Karen Street property within 6 months and remit the first $74,653.31 of proceeds to Robert as credit for his premarital funds that were used to purchase the property. Any remaining proceeds were to be considered a marital asset and divided equally between the parties. Finally, the court declined to recalculate Robert's income, stating that his income was properly reflected by the court's original child support order.

Tamara filed a motion to alter or amend or, in the alternative, for a new trial, on November 4, 2011. In the motion, she raised issues that are raised on appeal, sought clarification of the trial court's order regarding certain expenses, and sought innocent spouse relief under the Internal Revenue Code, which she did not seek at trial.

The district court erroneously found Tamara's motion to be untimely and therefore denied the motion. This error is not assigned on appeal, and after reviewing the issues raised in the motion, we conclude they either do not rise to the level of plain error or are adequately raised on appeal. See *Kuhnel v. BNSF Railway Co.*, 20 Neb. App. 884, 834 N.W.2d 803 (2013) (plain error exists where there is error, plainly evident from record but not complained of at trial, which prejudicially affects substantial right of litigant and is of such nature that to leave it uncorrected would cause miscarriage of justice or result in damage to integrity, reputation, and fairness of judicial process).

## ASSIGNMENTS OF ERROR

Tamara assigns that the district court erred in (1) calculating Robert's income for purposes of awarding child support and alimony, (2) failing to show how it calculated Robert's income, and (3) failing to award Tamara additional alimony and attorney fees other than the $1,000 from a prior contempt proceeding.

On cross-appeal, Robert assigns that the district court erred in awarding Tamara possession of the family home and control over its disposition.

## STANDARD OF REVIEW

An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, and alimony. *Id.*

In a dissolution of marriage case, an award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000).

ANALYSIS

*Calculation of Robert's Income.*

Tamara argues that the district court erred in calculating Robert's income and claims that his income from all sources is far in excess of that suggested by him or found by the district court. She asserts that the benefits provided to Robert and paid for by HDS, such as health insurance, life insurance, and health care copayments, should be considered part of Robert's income for the purposes of calculating child support and alimony. We disagree.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). The guidelines provide that in calculating child support, a court must consider the total monthly income of both parties. Neb. Ct. R. § 4-204; *Simpson v. Simpson*, 275 Neb. 152, 744 N.W.2d 710 (2008). Section 4-204 of the guidelines defines total monthly income as income "derived from all sources, except all means-tested public assistance benefits which include any earned income tax credit and payments received for children of prior marriages."

The Nebraska Supreme Court has not set forth a rigid definition of what constitutes income; rather, the court has relied on a flexible, fact-specific inquiry that recognizes the wide variety of circumstances that may be present in child support cases, because child support proceedings are, despite the child support guidelines, equitable in nature. See *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). A court is allowed to add to a party's income "in-kind" benefits from an employer or third party. See, *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001); *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998); *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994); *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995). However, findings regarding an employee's level of income should not be based on the inclusion of income that is entirely speculative in nature and over which the employee has little or no control. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

In the present case, the district court calculated Robert's income to be $7,400 per month, but it did not explain how it arrived at that amount. The testimony presented at trial was conflicting as to Robert's exact income. The evidence established that Robert earned either $3,750 or $3,000 every 2 weeks. Based on the district court's figure of $7,400, we can determine that the court did not base its calculation on biweekly payments of either $3,000 or $3,750, but, rather, a figure somewhere in between these two figures. Although we cannot determine exactly how the district court arrived at its figure, the Nebraska Supreme Court has approved basing an income calculation on actual earnings, earning capacity, or the addition of "in-kind" benefits. See *Gangwish v. Gangwish, supra*. Given the evidence presented at trial, the trial court could have calculated Robert's income based upon its determination of earning capacity or by including the value of some "in kind" benefits. Therefore, we cannot find that the district court abused its discretion in calculating Robert's income, particularly because when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed

the witnesses and accepted one version of the facts rather than another. See *Keig v. Keig*, 20 Neb. App. 362, 826 N.W.2d 879 (2012).

Nor can we find the court abused its discretion in failing to include all of the additional benefits from HDS that Tamara alleges should be included in the calculation of Robert's income. While the "in-kind" benefits provided by HDS certainly improve Robert's financial situation, they are not benefits he is entitled to receive from an employer; rather, they are gifts from his parents which are not guaranteed to continue and over which he has no control. Although the Nebraska Supreme Court in *Gangwish v. Gangwish, supra*, determined that under the appropriate factual circumstances, equity may require that a shareholder's income be calculated by looking through the legal structure of a closely held corporation, we note that Robert was not a shareholder of HDS. He does not control the purse strings that govern what he may or may not receive in "in-kind" benefits. We therefore find that the district court did not abuse its discretion, and we affirm the trial court's determination of Robert's income for purposes of calculating child support and alimony.

*Explaining Robert's Income Calculation.*

Tamara also claims the district court erred when it failed to explain how it arrived at Robert's income calculation. While Tamara does not contend that the court is required to make such a showing, she argues that the court should have provided an explanation because Robert's income is not readily apparent from the record.

The parties did not provide, nor were we able to locate, any authority requiring the district court to explain how it arrives at a party's income calculation. Nebraska law simply requires that a trial court attach the necessary child support worksheets to a child support order. See *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 837 N.W.2d 553 (2013). This court has noted that the most obvious purpose of this requirement is to ensure that the appellate courts are not left to speculate about the trial court's conclusions and to show that the trial court has """"done the math."""" See *id*. at 83, 837 N.W.2d at 559.

The child support worksheet in this case was attached to the dissolution decree, and thus, the trial court fulfilled its requirement of "show the math." Because we can determine how the district court arrived at Robert's income calculation and the evidence supports the court's calculation, the district court did not abuse its discretion in failing to "show the math" more specifically.

*Attorney Fees.*

Tamara next argues that the district court erred in failing to award any attorney fees beyond the $1,000 awarded from a prior contempt proceeding and failing to award additional alimony. In a dissolution of marriage case, an award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000). An award of attorney fees depends on a variety of factors, including the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

This case involved multiple contested issues, including custody of the children, child support, alimony, and property division, and the trial was conducted over the course of 4 days spread out over a 2-month period. Tamara was awarded nearly half of the marital estate and $880 per month in alimony for 72 months. In addition, Robert was ordered to pay $1,000 toward Tamara's attorney fees from a prior proceeding.

In our de novo review, we have considered the general equities of the case as well as the other relevant factors, and we cannot say that the district court abused its discretion in failing to award additional attorney fees to Tamara.

Tamara also argues that because the district court undervalued Robert's income, it correspondingly awarded an insufficient amount of alimony to Tamara. Because we find no error in the district court's calculation of Robert's income, we reject Tamara's argument with respect to alimony.

*Marital Home.*

On cross-appeal, Robert argues that the district court erred in awarding Tamara possession of the Karen Street property and control over its disposition when she had no equity in the home. The parties conceded at oral argument that the property has been sold pursuant to the district court's order.

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Green v. Lore*, 263 Neb. 496, 640 N.W.2d 673 (2002). As a general rule, a moot case is subject to summary dismissal. *Id.*

We conclude the issue raised by Robert on cross-appeal is moot as a result of the sale of the property, and accordingly, we dismiss the cross-appeal.

## CONCLUSION

We conclude the district court did not abuse its discretion in calculating Robert's income because the record supports the district court's calculation and Robert has no control over receipt of additional benefits from HDS. Additionally, it was not an abuse of discretion for the trial court to fail to specifically explain how it arrived at Robert's income calculation when it is not required to do so and we can determine how Robert's income was derived. Finally, the district court did not abuse its discretion in failing to award Tamara more than $1,000 in attorney fees or additional alimony.

As for Robert's cross-appeal, we find that the property has been sold, rendering the issue moot. We therefore affirm the decision of the district court with respect to the issues raised by Tamara on appeal and dismiss Robert's cross-appeal.

AFFIRMED.