No. 121,344

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TRAVELERS CASUALTY INSURANCE,
*Appellant*,

v.

LARRY G. KARNS and ONEBEACON AMERICAN INSURANCE COMPANY,
*Appellees*.

SYLLABUS BY THE COURT

1.

An intermediate appellate court cannot vest jurisdiction in a tribunal that does not otherwise have jurisdiction by remanding the case to the tribunal.

2.

The Workers Compensation Board and the Division of Workers Compensation, through its Director, are separate agencies for purposes of the Kansas Judicial Review Act (KJRA).

Appeal from Workers Compensation Board. Opinion filed September 17, 2021. Appeal dismissed.

*William L. Townsley* and *Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant Travelers Casualty Insurance.

*Glenn H. Griffeth*, special assistant attorney general, Kansas Department of Labor, for appellee Larry G. Karns.

*Timothy A. Emerson*, of Wallace Saunders, Chtd., of Wichita, for appellee Kansas Workers Compensation Fund.

1

*Kip A. Kubin*, of Martin Pringle, of Overland Park, for appellee OneBeacon American Insurance Company.

Before ARNOLD-BURGER, C.J., HILL and ATCHESON, JJ.

ARNOLD-BURGER, C.J.:  Sometimes even an appellate court can overlook the obvious and complicate a case beyond the recognition of the parties. That is what happened here. At one point, the parties presented this court with a straightforward question:  Could the Director of the Workers Compensation Fund (Fund) deny a request for payment from the Fund that an administrative law judge (ALJ) ordered and instead impose payment on a third party? We then complicated that question beyond recognition by remanding the case that came to us from the Shawnee County District Court, with no involvement of the Workers Compensation Board (Board), to the Board for them to basically reconsider and clarify their ruling that was final months after any time to appeal had passed. This was a result neither party requested, and no party agrees with. But rather than appeal that decision, the parties accepted it, further complicating what we do next.

After carefully peeling back the layers, we agree with the parties that the Board never acquired jurisdiction over this case, and just as the parties cannot stipulate to jurisdiction, an intermediate appellate court cannot create it out of whole cloth. Therefore, the appeal is dismissed for lack of jurisdiction.

FACTUAL AND PROCEDURAL HISTORY

The facts of this case can be found in two prior opinions of this court—*Barker v. Grace, Unruh & Pratt*, No. 108,223, 2013 WL 5187413 (Kan. App. 2013) (unpublished opinion), and *Travelers Cas. Insurance v. Karns*, 56 Kan. App. 2d 388, 431 P.3d 301 (2018). Those facts are unimportant here. At this stage of the litigation suffice to say that Tamera Barker suffered two distinct accidents, one in 2005 and one in 2007. These

occurred while she was working for two employers, each with different workers compensation insurance carriers, OneBeacon American Insurance Company (OneBeacon) and Travelers Casualty Insurance (Travelers) respectively for purposes of this appeal. *Barker*, 2013 WL 5187413, at *2.

This appeal arises from a dispute—not over the amount the worker should recover, but over who should pay for the roughly $152,000 in preliminary medical benefits paid— the Workers Compensation Fund (the Fund) or Travelers. *Travelers*, 56 Kan. App. 2d at 390. So we will examine how this particular dispute came to be.

*OneBeacon paid preliminary medical benefits it was not required to pay.*

Early in the history of Barker's workers compensation claim, OneBeacon paid about $152,000 in preliminary medical benefits to Barker. See *Travelers*, 56 Kan. App. 2d at 390. Later, Travelers was held responsible for much of Barker's workers compensation award as well as all future medical benefits. See *Barker*, 2013 WL 5187413, at *2. The ALJ and arguably the Board (through its affirmance of the ALJ order) found that if preliminary medical bills were ordered to be paid outside listed coverage dates, the orders were issued in error and the "expenses [were] recoverable by the respective carriers through the [Fund]." No one contested this order, although there would later be significant disagreement about its meaning and scope. The case bounced back and forth between the Board and this court. During that time, there was no further discussion about whether overpayments by OneBeacon should be paid by the Fund. Once the Board and this court resolved all disputes and the time to appeal had passed, OneBeacon went to the Fund to get reimbursement.

*OneBeacon seeks reimbursement from the Fund.*

OneBeacon wrote a letter to the chief administrative officer of the Division of Workers Compensation, Larry G. Karns (Director), explaining that based on the two distinct accidents, it should not have been responsible for the preliminary medical benefits and that it was entitled to reimbursement from the Fund in the amount of $151,782.59. It was OneBeacon's position that it was simply requesting reimbursement from the Fund as it believed the Board and ALJ had directed it to do.

*The Director denies OneBeacon's request and orders Travelers to reimburse OneBeacon.*

As the gatekeeper of the Fund, the Director requested additional written submissions from the two insurance carriers in the case "[b]efore certifying [$151,782.59] to be reimbursed and paid to [OneBeacon] by [Travelers]." Travelers, who had not been part of any request to the Director, responded, arguing that the Fund was responsible for any reimbursement, stating that K.S.A. 2017 Supp. 44-534a(b) controlled. See *Travelers*, 56 Kan. App. 2d at 391. Travelers did not dispute the amount OneBeacon had paid in excess of the amount for which it was legally responsible based on the Board ruling. Instead, it argued that the Fund was responsible for payment. This was based on the one statement from the ALJ—that bills that were ordered to be paid outside listed coverage dates should be paid by the Fund—and not on the final decision of the Board finding Travelers responsible for expenses incurred during its coverage period.

After considering the arguments from both parties, the Director ultimately directed Travelers to reimburse OneBeacon for the full amount of the preliminary medical benefits, citing K.S.A. 2017 Supp. 44-556(e) as the controlling statute. 56 Kan. App. 2d at 392.

4

*Travelers appeals the decision of the Director under the Kansas Judicial Review Act and adds two equitable claims.*

Travelers faced a conundrum—how to obtain judicial review of an order from the Director denying payment from the Fund and ordering it to reimburse OneBeacon for overpayment.

So in July 2015, Travelers filed an action titled "Petition for Judicial Review or for Writ of Prohibition and an Injunction" with the Shawnee County District Court. Through the petition, Travelers sought "review by the Court of the order entered by the Workers Compensation Director." Travelers identified the parties to the action as OneBeacon and itself. It asserted that it was a party that had standing to seek judicial review because it was a person to which the agency action was specifically directed.

Travelers asserted that a petition for judicial review was the proper avenue to obtain relief because the order "was not issued by an Administrative Law Judge and is therefore not reviewable by the Workers Compensation Board under K.S.A. 44-555c(a). Nor [was] it an action of the Board which may be reviewed directly by the Court of Appeals under K.S.A. 44-556(a)." Although it argued that review under the Kansas Judicial Review Act (KJRA) was appropriate, Travelers—as was its duty of candor to the court—discussed and attached to its petition a copy of a memorandum decision filed by District Judge Franklin Theis that was issued a few months before this action was filed in the same judicial district. His opinion held that the KJRA was not the statutory basis for a review of the Director's order based mainly on the Supreme Court decision in *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 104 P.3d 378 (2005). Thus, as an alternative basis for relief, Travelers included a writ of prohibition against the Director and an injunction against OneBeacon.

5

We pause to explain those terms. A writ of prohibition is "[a]n extraordinary writ issued by an appellate court to prevent a lower court from exceeding its jurisdiction or to prevent a nonjudicial officer or entity from exercising a power." Black's Law Dictionary 1465 (11th ed. 2019). Similarly, an injunction is a "court order commanding or preventing an action." Black's Law Dictionary 937 (11th ed. 2019). To obtain an injunction a party must show that there is no adequate remedy at law and "irreparable injury will result unless the relief is granted." Black's Law Dictionary 937 (11th ed. 2019); see also *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 619, 440 P.3d 461 (2019). While injunctive relief is defined by statute in Kansas, writs of prohibition are solely a common-law remedy. See K.S.A. 60-901 (nature of injunction). They are both equitable remedies and we review a judge's decision to grant or deny them for an abuse of discretion. See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 379, 22 P.3d 124 (2001). So Travelers was asking that we prevent the Director from exercising his power in a way to require Travelers to pay on the claim, and an injunction to prevent OneBeacon or the Fund from trying to collect on the Director's order.

The district court relied on stipulated facts to reach its decision. The district court, in an extremely well written and thorough opinion, held Travelers could not obtain judicial review of the reimbursement ruling through the KJRA. It also held that Travelers' request for a writ of prohibition was more properly characterized as a writ of mandamus and if Travelers could establish that the Director's decision was wrong based on the facts and law he had before him, then Travelers could prevail on this theory. But based on the facts and law, the district court found that Travelers could not establish the Director was wrong or that his decision was arbitrary or unreasonable; therefore, its claim failed on the merits.

The district court noted the following in support of its conclusion that the Director did not err.

1. The Director is the gatekeeper for reimbursement claims against the Fund, whether based on K.S.A. 2020 Supp. 44-534a or K.S.A.2020 Supp. 44-556.

2. The judge noted the difference between K.S.A. 2020 Supp. 44-534a(b) and K.S.A. 2020 Supp. 44-556(d) and (e). He noted that payments from the Fund under K.S.A. 2020 Supp. 44-556(d)(1) are paid to the insurer when it is later determined after review—as a matter of fact or law—that the worker was *not entitled* to the benefits awarded by the Board. In that case, the Fund reimburses the employer or insurance company—basically absorbing the overage so that the worker's recovery remains constant. Likewise, K.S.A. 2020 Supp. 44-534a(b) requires payment from the Fund when an insurer has overpaid an employee.

    Instead, the court noted that K.S.A. 2020 Supp. 44-556(e) is the applicable provision here. It provides that an insurer that has overpaid under circumstances like those here is to be reimbursed by the party who was ultimately held liable for such payment. It goes on to provide that the Director is tasked with determining the amount of money to be reimbursed and by whom in accordance with the final decision in the case. No specific request is required—although OneBeacon made such a request by letter here. Although the statutes require that the Director determine the amount of reimbursement due, he or she must do so in accordance with the final Board decision. The court cited *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 174, 239 P.3d 51 (2010), for the proposition that disputes between insurance carriers concerning the respective liabilities for payments should be litigated separately and not as part of the workers compensation case.

    The court held if it were to interpret the statutes as the insurance companies argue here, the court would be required:

7

"[T]o implement a widely improbable view that, because of a coverage question between insurers, one not grounded on a worker's need arising under the workers compensation laws, the legislature intended that a company paying a valid workers compensation medical expense, but one that should have been paid by another carrier, should instead be reimbursed from the Workers Compensation Fund rather than the actual carrier responsible."

In further explaining the error in the interpretation sought by the insurance companies, the judge noted:

"The Workers Compensation Fund is made up of tax dollars, death benefits from workers with workers compensation benefit coverage, but who had no beneficiaries to enforce their rights, and from insurance industry fees. It is designed to be a pool of money available for reimbursement such as to incentivize the prompt payment of claims to workers so claiming without the payors worrying that if, ultimately, no claim entitlement is found, the money paid out could not be recovered from the worker. No such worry about the ability to make a recovery of a payment made by one insurer that another insurer should have made can remotely be discerned for requiring such a character of mis-payment as one that should be reimbursed by the Fund. . . . The mischief between insurers that could be created from such a holding would certainly assure the Fund would be neither long lasting nor inexpensive to maintain. Simply, the legislature intended no payment from the Workers Compensation Fund for that character of insurer error."

3. The judge found that Travelers cannot rely on the language in the ALJ's opinion discussing reimbursement by the Fund. He noted that the Board's award stated:

"'The Award of the ALJ regarding the previously ordered medical bills, current medical expenses, unauthorized medical expenses, if any and future medical treatment is affirmed.'"

But, he pointed out, there were no "'unauthorized medical expenses.'"

8

> "However, the fact that no one involved in the case would be prone or interested in the issue—having been proffered a route to absolution from payment responsibility by the ALJ—would exemplify some of that 'mischief' upon which the Court earlier reflected."

The judge had no trouble finding that the ALJ's comments were not the absolution Travelers thought it was. First, the ALJ said "'if'" certain medical expenses were *ordered in error*, they are recoverable from the Fund. The district court found that this was an expression of opinion, not an order. Moreover, there was no finding that Barker was not entitled to the benefits she received, so there were no benefits *ordered in error* to the worker. The ALJ had no jurisdiction to enter an order requiring the Fund to make payments that were properly due the worker from an insurance carrier.

4. The question here, the district court opined, is whether the final award was clear enough that the Director could decide it in a purely ministerial fashion, without adjudication. Because OneBeacon and Travelers never litigated who was to reimburse OneBeacon as between the two of them, the court determined it needed to look at whether the liability and court orders related to reimbursement were clear.

5. The district court held they were clear. It pointed out that the Board's final decision clearly stated that medical expenses incurred by Barker within the stipulated coverage dates of a carrier were that carrier's responsibility. It held that Grace and Travelers owed the claimant $96,595.40. OneBeacon was assessed a total owed claimant of $58,474.54. All future medical expenses were assessed against Travelers. In essence, this order trumped any other orders. It was final and specific as to liability.

"Hence, given the absence of some assertion by Travelers that it has some viable defenses that could not be raised within the workers compensation proceedings that would justify the Director's abstention from acting or otherwise, the existence of a positive declination by OneBeacon of the offer of the Director's assistance, the Director's . . . action should stand."

Contrary to the panel's statement in *Travelers*, the district court *did* affirmatively endorse the Director's decision. It found that Travelers' lawsuit could be interpreted as an action in mandamus (rather than prohibition), and, considering it such, the Director's decision was within the law, was not arbitrary or capricious, and Travelers had not proven otherwise. But see *Travelers*, 56 Kan. App. 2d at 392 ("The district court's ruling effectively left Karns' order undisturbed without explicitly endorsing its substantive conclusion on reimbursement."). Travelers appealed the district court's ruling, which brought the case to this court a second time. And this is where, in our opinion, the case went off the rails.

*We discuss the panel's decision in* Travelers.

In *Travelers*, the panel began by holding that the Director overstepped his statutory authority by going beyond his role by *adjudicating* the dispute regarding reimbursement between the parties. See 56 Kan. App. 2d at 394-97. The court noted that it seems as though reimbursement issues are "often raised through a letter to the director, who then steps in and decides them." 56 Kan. App. 2d at 396. But, the panel opined, this is not the proper procedure according to the statutes governing such issues. Instead, it seemed "to be one of those procedural bypasses a specialized agency and regular practitioners before that agency have developed to promote efficiency notwithstanding a different—and arguably more cumbersome—statutory process." 56 Kan. App. 2d at 396.

This court then expressed concern that the Fund might be liable for reimbursement, even though the Fund was not a party to the workers compensation

10

proceedings. 56 Kan. App. 2d at 394, 396-97. This court could not "endorse the informal bypass of the Board's statutorily established adjudicative authority" when the Director issued his order, which contained factual findings and legal conclusions, rather than a mere certification after the Board had resolved all disputes. 56 Kan. App. 2d at 397.

Before addressing the remaining issues, the court held that it was going to "fashion a remedy returning the issue to the Board for consideration consistent with the provisions of the Workers Compensation Act governing reimbursements, the law applicable to repetitive use injuries, and the earlier findings in this case regarding the legal secretary's multiple injuries and accidents." 56 Kan. App. 2d at 397. To support this chosen remedy, the court cited to K.S.A. 77-622(b) for the proposition that "[u]nder the KJRA, a court may remand to the agency 'for further proceedings.'" 56 Kan. App. 2d at 397. The panel failed to note that the "agency" it found was subject to the KJRA was the Director, not the Board.

The panel then addressed the district court's rejection of Travelers' petition under the KJRA and as an original action. This court held that the district court erred when it determined that the Director's decision was not an agency action appealable under the KJRA. 56 Kan. App. 2d at 398. By doing so, the panel expressed its disagreement with *Cincinnati Insurance Co. v. Karns*, 52 Kan. App. 2d 846, 379 P.3d 399 (2016), which the *Travelers* court acknowledged appeared to limit "application of the KJRA to Board determinations and precluding any review of the director's actions." 56 Kan. App. 2d at 398-99. Because the panel believed that the Director's decision was an agency action, the panel held that the KJRA applied to his order and the district court erred in ruling that it could not consider Travelers' petition under the KJRA. 56 Kan. App. 2d at 401.

The court in *Travelers* continued by stating that if it was correct that the Director's actions were reviewable under the KJRA, then Travelers would not need to resort to an extraordinary remedy. But, the court cautioned, if the panel was mistaken, then Travelers

11

"likely could bring an action for extraordinary relief whether characterized as mandamus or prohibition to correct Karns' action in issuing an order exceeding the statutory authority granted the director in K.S.A. 2017 Supp. 44-556(e)." 56 Kan. App. 2d at 404. That said, it failed to address the request for extraordinary relief that Travelers did make, and the district judge did rule on.

The panel concluded by stating:

"[The Director's] reimbursement order exceeds the statutory authority afforded the director in K.S.A. 2017 Supp. 44-556(e). On its face, the order is an agency action subject to review under the KJRA. Because the order oversteps [the Director's] authority, it is invalid at least as an erroneous application of the law and as a failure to follow prescribed procedures. See K.S.A. 2017 Supp. 77-621(c)(4), (c)(5).

"We, therefore, remand the issue of the reimbursement due OneBeacon to the Workers Compensation Board for further proceedings." *Travelers*, 56 Kan. App. 2d at 404.

The court then provided several issues for the Board to consider on remand. 56 Kan. App. 2d at 404-05. No petition for review was filed with the Kansas Supreme Court.

After the *Travelers* court remanded the case, things got even dicier. The Director impleaded the Fund. The parties filed briefs with the Board to address the issues on remand. Travelers mainly argued that the Board lacked jurisdiction to take any action. OneBeacon, the Fund, and the Director agreed that the Board lacked jurisdiction over the case on remand. Other issues were discussed, such as who was properly a party to the case.

In a split decision, the Board determined that it had jurisdiction to hear the appeal. Even so, it made it clear that it had strong reservations about doing so. The majority of

12

the Board stated: "The Court of Appeals remanded this matter to the Board. Implicit in such decision, the Board must have jurisdiction to hear the remand. However, we share some of the well-reasoned concerns raised by the parties, as well as the dissenting opinion, about how and why we have jurisdiction." The majority continued that it wanted to agree "with the parties and the dissenting opinion that it should not have jurisdiction over this matter, at least in the path it was delivered to us." But the majority noted that it was duty bound to follow this court's directions.

The dissenting opinion, referred to by the majority, would have dismissed the case based on lack of jurisdiction. The dissent believed that this court "conferred jurisdiction that does not exist in the Board's authorizing statute."

The Board's majority ultimately held that the Fund should have been, and was, impleaded, that OneBeacon properly made and preserved a request for reimbursement, the ALJ correctly held each insurance carrier liable for benefits incurred during the carrier's dates of coverage, the ALJ could not order the Fund to reimburse any carrier for benefits incurred outside the carrier's period of coverage, and that Travelers must reimburse OneBeacon. This aligned with the law as outlined by Judge Theis in his opinion in the *Travelers* case. Travelers timely appealed.

ANALYSIS

In beginning our review of this case, a case that seems simple on its face, we are reminded of the prophetic words of Justice Carol Beier speaking to the dangers of giving a simple answer to a case that has so much going on beneath the surface.

> "Although the issues before us are simply summarized, their resolution is not
> because they arise in a complicated factual and procedural context, revealed in fits and
> starts over the life of a series of cases. Like icebergs, the appearance of the issues above

13

the waves is relatively benign; their mass and shape below the waves goes unnoticed or ignored at peril." *State v. Comprehensive Health of Planned Parenthood*, 291 Kan. 322, 325, 241 P.3d 45 (2010).

We must examine the iceberg before us. We could look at this simply, skip over the issue of the jurisdiction of the Board to hear the case based solely on our remand, and find that the Board was acting reasonably and within the law when it found, just as it had in 2013, that Travelers was responsible for all expenses incurred after the second injury. We could hold that based on the Board's ruling the Director was correct to find that Travelers must pay OneBeacon for its overpayment. In failing to address the jurisdiction issue beneath the surface, we would be essentially holding no harm no foul, since the worker has already been compensated. To do otherwise would result in a windfall to Travelers at the expense of the Fund. Our decision would also align with K.S.A. 2020 Supp. 44-556(e), which requires each insurer to be responsible for their own coverage periods. But if we did that, we would be ignoring the ice beneath the surface. Looming beneath the surface is the argument from all parties to this litigation that the Board never had jurisdiction to hear this case and an appellate court cannot make it so by fiat. We choose to look beneath the surface—as we are required to do when a party questions our jurisdiction—and examine whether the Board and, therefore, we have any jurisdiction to consider this issue.

To reiterate, all parties here maintain that the Board did not have jurisdiction regardless of this court's order. The parties differ only in their reasons.

*Our review of jurisdiction is unlimited.*

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). An agency has jurisdiction over a case only if the jurisdiction is authorized by

14

statute. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, Syl. ¶ 1, 228 P.3d 403 (2010). The issue of jurisdiction is so central to any case that it is the responsibility of an appellate court to consider the issue of jurisdiction sua sponte if it resolves an issue before it. *Comprehensive Health of Planned Parenthood*, 291 Kan. 322, Syl. ¶ 1. If a lower court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. See *In re Care & Treatment of Emerson*, 306 Kan. at 39.

In sum, it is no secret that the right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). To address the jurisdictional issue, we return to the decision in *Travelers*, which ostensibly delivered jurisdiction to the Board through its remand.

*Travelers properly pled its appeal of the Director's decision as well as its equitable claims.*

The first claim that Travelers made in its petition in the Travelers case was a request to review the Director's reimbursement decision under the KJRA. It then added two equitable claims, one for a writ of prohibition and one for injunctive relief. It is not unusual for a party to bring a claim for review of an agency action under the KJRA and a separate claim for either equitable relief or constitutional, contract, or tort relief. See *Heiland v. Dunnick*, 270 Kan. 663, 668-69, 19 P.3d 103 (2001) (actionable claims which fall outside the authority of an agency to grant can support a separate action by an aggrieved party); *Lindenman v. Umscheid*, 255 Kan. 610, 619, 875 P.2d 964 (1994) (finding KJRA not exclusive remedy for tort claims against agency).

15

Nor is there anything untoward about such a strategy as the dissent suggests. We agree with the dissent that they may be "dissimilar legal creatures." Slip op. at 26. But just as a dog can have ticks and fleas, the claims *may* not be mutually exclusive. We recognize that the manner the litigation proceeds with regards to a KJRA administrative review in the district court is quite different than the process for an independent equitable or other Chapter 60 claim, where discovery would occur. And granted, equitable remedies are not available if there is an adequate remedy at law. See *Nelson v. Nelson*, 288 Kan. 570, 597, 205 P.3d 715 (2009); *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 755, 199 P.3d 781 (2009) (holding that where relief sought could have been provided under KJRA, injunction relief is not proper). Moreover, the district court may end up finding that the KJRA is the exclusive remedy under the facts of the case. So we also agree with the dissent, that review by the district court of the KJRA claim must come first—which it did here. But a "party may set out two or more statements of a claim or defense alternately or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." K.S.A. 2020 Supp. 60-208(d)(2).

Travelers rightfully found such an approach necessary in light of our Supreme Court's decision in *Schmidtlien*, holding that "[t]he Workers Compensation Act does not provide for the right to appeal the Director's determination on reimbursement." 278 Kan. 810, Syl. ¶ 4. By bringing the claim under the KJRA, in spite of its claim being disallowed under *Schmidtlien*, it preserved its ability to challenge *Schmidtlien* on appeal. If no relief was available under the KJRA, Travelers' equitable claims could prevail.

Predictably, the district court found—as it had before—that Travelers could not bring an action under the KJRA challenging the Director's denial of reimbursement because the Supreme Court in *Schmidtlien* had closed that avenue. The panel in *Travelers* acknowledged that *Cincinnati Insurance Co.*, 52 Kan. App. 2d 846—a case decided after Judge Theis entered his decision in this case and also rooted in *Schmidtlien*—seemed to

16

"establish a rule precluding review under the KJRA of anything the director does." But the panel in *Travelers* "disagree[d] with that broad rule." 56 Kan. App. 2d at 399. Because it disagreed, it believed that the case was properly before it as an appeal of the Director's decision and found that the district court erred in not addressing the case on that basis.

We pause here to note that although the majority believes *Cincinnati Insurance* is more persuasive than the panel's arguments against its application in *Travelers*, we need not get into a discussion about the conflicting opinions from our court. It makes no difference in our final decision here. So we will assume, without deciding, for purposes of this appeal that the KJRA applies, and Travelers had a right to appeal on that basis. We instead examine how the *Travelers* court decided to resolve that issue.

*An intermediate appellate court cannot vest jurisdiction in a tribunal that does not otherwise have jurisdiction by remanding the case to the tribunal.*

Typically, when a district court fails to address an issue that an appellate court finds it should have addressed, it remands the case to the district court to decide the issue under the proper framework. With an appeal under the KJRA, when reviewing a district court's decision, we first determine whether the district court "observed the requirements and restrictions placed upon it. [We] then [conduct] the same review of the administrative agency's action as did the district court." *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005). Appellate courts exercise the same statutorily limited review of the agency action as does the district court: as though the party had filed the appeal directly with the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). We start with the presumption that the agency action was valid. *Jones*, 279 Kan. at 140. The burden of proving the invalidity of the agency action rests on the party asserting the invalidity. K.S.A. 77-621(a)(1).

17

So traditionally, finding that the lower court failed to analyze the case under the proper framework, an appellate court would remand the case to the district court to review the case under the proper framework, in this case the KJRA. But it is also not unheard of for the appellate court to keep the case since its standard of review is the same as the district court and it has all the same information before it as the district court did to review the agency action. That is particularly likely in a case such as this where the district court may not have considered the matter under the KJRA but conducted the same analysis when reviewing whether a writ of mandamus was appropriate. But the panel in *Travelers* did neither. Instead, it remanded the case to the Board, in a noble effort to give the Board the opportunity to weigh in on who owed what to whom.

As Travelers points out in its brief, "remand" is defined as "[t]he act or an instance of sending something (such as a case, claim, or person) back for further action." Black's Law Dictionary 1547 (11th ed. 2019). For example, the Nebraska Court of Appeals recently noted that "[i]n appellate procedure, a 'remand' is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order." *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 83, 837 N.W.2d 553 (2013).

This case came to the *Travelers* court from the District Court of Shawnee County. If an error needed to be corrected, it was the only entity to which to remand it. Instead, the panel in *Travelers* decided to, admittedly, "fashion" its own remedy—remanding it to the Board. 56 Kan. App. 2d at 397. The problem with this approach is that there was no pending case before the Board. The Board and this court had already finally and conclusively decided the case in *Barker*. While K.S.A. 77-622(b) allows a court to remand to the agency "for further proceedings," the Board here did not have any proceedings to further. It had ruled on this issue. That ruling was final and not appealed. Although the parties may later have disputed the clarity and effect of the Board's order, that does not make it any less final. There was no statutory basis to vest the Board with

18

jurisdiction to hear the case. An intermediate appellate court cannot vest jurisdiction in a tribunal that does not otherwise have jurisdiction by remanding the case to the tribunal.

Moreover, even if this court could accept the appeal as one validly filed under the KJRA and remand the case directly to the agency instead of the district court, the "agency" subject to the KJRA procedure was the Director of the Division of Workers Compensation, not the Board. See K.S.A. 77-602(k) (defining state agency for purposes of the KJRA as "officer" or "division"); K.S.A. 75-5708 (noting that the Director of Workers Compensation is the chief administrative *officer* of the *Division* of Workers Compensation). The Director and the Board are two distinct entities. See K.S.A. 2020 Supp. 44-549(b) ("The *director* and the *board*, for the purpose of the workers compensation act, shall have power to administer oaths, certify to official acts . . . ." [Emphasis added.]); K.S.A. 2020 Supp. 44-536a(d) ("the administrative law judge, director *or* board, upon motion or upon its own initiative . . . ." [Emphasis added.]). As the dissent concedes, K.S.A. 2020 Supp. 44-556(e) bifurcates the process of reimbursement between the Board and the Director, recognizing them as two separate entities. Slip op. at 32. In short, even if there was jurisdiction for the *Travelers* court to remand this case to the agency for further action, there was no statutory authority for the *Travelers* court to remand the case to the Board. The Board was not the agency from which the disputed decision was made and the appeal arose.

*One panel of the Court of Appeals has no authority to overrule another.*

We recognize that there is no authority for one panel of the Court of Appeals to overrule a decision of another panel. *In re Marriage of Cray*, 254 Kan. 376, 382, 867 P.2d 291 (1994). But separate panels of the Court of Appeals should strive to be consistent in decision-making. "[U]ltimately the court must do its best to decide each case based on the facts and the law, bearing in mind that the Kansas Supreme Court is the

19

final arbiter of all disputes." *State v. Horselooking*, 54 Kan. App. 2d 343, 350, 400 P.3d 189 (2017).

Although we firmly believe—and agree with *all* the parties—that the panel in *Travelers* erred by remanding the case to the Board, we are not overruling its opinion. Its opinion was final and not appealed. By not appealing that decision, but then arguing on appeal here that the action the *Travelers* court took deprived the Board of jurisdiction, Travelers must accept the fact that its new appeal must stand or fall on its own merits. See *Rosales-Mireles v. United States*, 585 U.S. ___, 138 S. Ct. 1897, 1911, 201 L. Ed. 2d 376 (2018) (Thomas, J., and Alito, J., dissenting) (noting that the court must protect against so-called "'sandbagging'" "'remaining silent about [the litigant's] objection and belatedly raising the error only if the case does not conclude in his favor'").

*Our ruling here is confined to whether we have jurisdiction to hear the matter before us.*

We have a separate duty to examine our jurisdiction to hear the case before us. We find that this court cannot vest jurisdiction in an entity that has no jurisdiction to begin with. Just as parties to a case cannot confer subject matter jurisdiction by consent, waiver, estoppel, or by failure to object to jurisdiction, neither can the appellate court create jurisdiction out of whole cloth. Decisions made by a court without subject matter jurisdiction are legally void. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) ("[p]arties cannot confer subject matter jurisdiction by consent, waiver, or estoppel"); *Jahnke v. Blue Cross and Blue Shield of Kansas, Inc.*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015) (holding proceedings conducted or decisions made by a court are legally void when there is an absence of subject matter jurisdiction). This court is not free to fashion a remedy granting jurisdiction where it does not exist through statute.

20

While typically the law-of-the-case doctrine would prevent any challenge to the holdings of the court in a case that a party has not appealed, the law-of-the-case doctrine "cannot prohibit a court from disregarding an earlier holding in an appropriate case." *Castro v. United States*, 540 U.S. 375, 384, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003). It simply expresses common judicial practice and does not limit the courts' power. 540 U.S. at 384; see also *State v. Soto*, 310 Kan. 242, 255, 445 P.3d 1161 (2019). We simply cannot ignore the fact that a judgment without subject matter jurisdiction is void. *In re Care & Treatment of Easterberg*, 309 Kan. 490, 493, 437 P.3d 964 (2019).

Even though we find that the Board lacked jurisdiction to hear this case on remand, we appreciate and understand the Board's willingness to do so rather than defy an order of this court. We placed it in an untenable position of our creation, not theirs. But because it had no jurisdiction, neither do we.

*Conclusion*

So where does that leave OneBeacon and its unreimbursed claim? Litigation in this case has been in the pipeline for approximately seven years. Litigation in which OneBeacon, the party who all parties agree has paid money it did not have to pay, has failed—or consciously refused—to collect directly against Travelers as Judge Theis suggested might be the proper route under *Mitchell*, 291 Kan. at 174. Litigation that over the course of about seven years has surely cost both insurance carriers and unfortunately the taxpayers of the State of Kansas more than the amount of the recovery sought. Litigation in which both Travelers and OneBeacon elected not to appeal the *Travelers* opinion, which if accepted, may have resulted in clarification regarding the application of *Schmidtlien*, the continuing jurisdiction, if any, of the Board, the ministerial nature of the Director's decision, and the availability of equitable relief. To borrow from Judge Theis, any question as to what happens next is unfortunately the natural result of the mischief of

21

the insurance companies involved and their strategic decisions in this case. They will have to decide their next steps.

Because we find that the Board lacked jurisdiction to hear the case and thus, we lack jurisdiction to hear this appeal, our only available action is to dismiss the case for lack of jurisdiction.

Appeal dismissed for lack of jurisdiction.

* * *

ATCHESON, J., dissenting:  This is the latest chapter and second appeal in the legal maneuvering of Travelers Casualty Insurance to avoid reimbursing another insurance carrier for about $150,000 in benefits paid to an injured worker. After this court applied the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., to remand the reimbursement issue to the Workers Compensation Appeals Board in *Travelers Cas. Insurance v. Karns*, 56 Kan. App. 2d 388, 431 P.3d 301 (2018) (*Travelers I*), the Board concluded Travelers should reimburse OneBeacon American Insurance Company for the benefits that company had paid. The Board's ruling should have drawn everyone close to the final chapter of this matter.

But the majority subscribes to a misbegotten jurisdictional argument Travelers has advanced in its continuing effort to deflect any legal responsibility for the benefits. In doing so, the majority vacates the Board's order, creating a legal void it doesn't endeavor to fill. Contrary to the plain language of the KJRA, the majority concludes *Travelers I* had no authority to remand that appeal to the Board to resolve the substantive dispute over reimbursement in the first instance. The KJRA explicitly affords a reviewing court the option of remanding the appeal of an agency action to the agency for further proceedings. K.S.A. 77-622(b) ("The court may . . . remand the matter for further

22

proceedings."); K.S.A. 77-622(d) ("If the court . . . remands the matter to the agency for further proceedings," it may enter temporary orders necessary to protect the interests of the litigants and the public "pending further proceedings or agency action."). Contrary to the majority's suggestion, the Board and the director of the Division of Workers Compensation are not distinct agencies separate from each other or from the Division itself for jurisdictional purposes of the KJRA—a decidedly strange proposition that undermines the legislative intent behind and the statutory scope of judicial review. See K.S.A. 77-603(a) ("This act applies to all agencies and all proceedings for judicial review . . . not specifically exempted[.]").

In short, the remand remedy in *Travelers I* entails a statutorily proper way of handling appeals of agency actions under the KJRA. The ruling did not transgress some jurisdictional barrier that negates the Board's recent decision on the merits—the matter presently before us—that Travelers should reimburse OneBeacon for benefits everyone agrees were properly due Tamera Barker, the injured worker.

As the author of *Travelers I*, I dissent from the gross distortion of the KJRA that underlies the majority's decision today. Apart from the jurisdictional challenge, Travelers has otherwise disputed the Board's decision. We should reject the jurisdictional argument and take up the other points. Because the majority has not addressed Travelers' alternative claims of error, I, too, refrain from commenting on them.

I.

As a recurrent theme in its opinion, the majority castigates the *Travelers I* panel for recognizing the statutory authority to adjudicate those reimbursement disputes lies with the Board rather than with the workers compensation director under K.S.A. 2020 Supp. 44-556(e). But that really is a question of workers compensation law separate from

23

the authority of a court to remand an agency action to the agency for further proceedings under the KJRA.

So *Travelers I* recognized that when insurance carriers have a substantive dispute over which of them ultimately should be responsible for benefits properly paid to an injured worker, the Board resolves the dispute, thereby permitting the director to then issue a certification for reimbursement from one carrier to the other, if necessary. K.S.A. 2020 Supp. 44-556(e) (after administrative law judge or, on review, Board or appellate court determines insurance carriers' responsibility for benefits properly paid worker, director is then to "determine the amount . . . to be reimbursed . . . in accordance with the final decision on appeal or review and shall certify . . . such amount to be reimbursed"). The director's certification amounts to a purely ministerial function that itself is not subject to challenge. K.S.A. 2020 Supp. 44-556(e) ("Upon receipt of such certification, the party required to make the reimbursement shall pay the amount . . . in accordance with such certification."). In this case, the director impermissibly decided the substantive question of Travelers' responsibility for benefits OneBeacon had paid by issuing in a five-page order with findings of fact and conclusions of law. The director combined the order with a certification of reimbursement directing Travelers to pay OneBeacon $151,782.59. The director entered the substantive order and the reimbursement certification in Barker's workers compensation case.

The director's order did more than determine an amount to be reimbursed. And whether correct or not on Travelers' legal liability, the order usurped the authority of the ALJ and the Board under K.S.A. 2020 Supp. 44-556(e). The majority acknowledges the director entertained and resolved substantive legal arguments from the insurance carriers. After inviting letter briefs, the director: (1) effectively rejected Travelers' written argument that echoed OneBeacon's suggestion the Workers Compensation Fund should be liable under K.S.A. 2020 Supp. 44-534a(b); (2) expressly held K.S.A. 2020 Supp. 44-556(d) to be inapplicable because the worker never received excessive benefits; and (3)

24

relied on K.S.A. 2020 Supp. 44-556(e) to order Travelers to reimburse OneBeacon based on the date of the governing accident that had been previously determined in adjudicating Barker's claim.

When Travelers challenged the director's agency action—the combined order and reimbursement certification—in a KJRA appeal in *Travelers I*, the panel found the director exceeded his limited authority under K.S.A. 2020 Supp. 44-556(e), since the Board never directly considered, let alone resolved, the dispute between the insurance carriers over their legal responsibility for the benefits. Rather than decide the substantive issue of Travelers' liability to OneBeacon, the panel remanded the matter to the agency consistent with K.S.A. 77-622(b) for the Board to exercise its authority in the first instance as outlined in K.S.A. 2020 Supp. 44-556(e). Now that the Board has done so adversely to Travelers, the insurance company has ginned up a phony jurisdictional objection to *Traveler I*'s otherwise prudential exercise of judicial restraint under the Workers Compensation Act and unremarkable exercise of statutory authority under the KJRA to remand to the agency for further proceedings.

## II.

A fundamental flaw in Travelers' argument and the majority's reasoning lies in the notion the KJRA appeal of the director's order amounted to an original action in the Shawnee County District Court and, therefore, the panel in *Travelers I* could not remand to the agency for further proceedings notwithstanding the authority to do so in K.S.A. 77-622(b). Relying on that faulty premise, the majority tosses around several largely unconnected theories as to why the panel in *Travelers I* should not have asked the Board to exercise its authority in K.S.A. 2020 Supp. 44-556(e) to specifically address and resolve the insurance carriers' dispute, so the director could then issue a certification of the precise amount to be reimbursed. I address those notions shortly.

25

Travelers has aided and abetted the majority's confusion with the way it fashioned its initial legal challenge to the director's order. Travelers filed a single petition in the Shawnee County District Court that combined an appeal of an agency action under the KJRA with an original Chapter 60 action for an order of mandamus or prohibition against the director under K.S.A. 60-801 et seq., to block enforcement of his order. I doubt the two properly can be combined in a single opening pleading or even in a single case. But even if they can, they are dissimilar legal creatures in material ways.[1]

[1]The majority chooses to quibble over whether a KJRA appeal of an agency action properly can be combined with an original Chapter 60 action in a single petition or case. As I have indicated, the answer to that point of administrative law and civil procedure makes no difference to the outcome here. The majority mistakenly implies that such a combined action is "not unusual" by suggesting parties often bring a "claim" for relief under the KJRA and a separate "claim" for relief grounded in tort or contract law. Slip op. at 15. The majority then cites to K.S.A. 2020 Supp. 60-208(d)(2) that permits a party to "set out two or more statements of a claim or defense alternately or hypothetically, either in a single count or defense or in separate ones." But it is hardly obvious K.S.A. 2020 Supp. 60-208 governs administrative appeals under the KJRA or that such an appeal constitutes such a claim. In *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 97, 106 P.3d 492 (2005), the court recognized that the KJRA could be supplemented by the Code of Civil Procedure as "a logical necessity" to adjudicate an administrative appeal when the KJRA fails to address a procedural point. That's well short of an endorsement for combining an administrative appeal with a Chapter 60 action, especially when the KJRA provides a detailed description of a petition for appellate review that does not authorize the joinder of other causes of action. K.S.A. 77-614.

The case authority the majority cites doesn't support its position or Travelers' hybrid action. In *Heiland v. Dunnick*, 270 Kan. 663, 668-69, 19 P.3d 103 (2001), the court acknowledged a party may file an action independent of the KJRA to vindicate rights and obtain relief that fall outside the agency's authority. In *Lindenman v. Umscheid*, 255 Kan. 610, 619-20, 875 P.2d 964 (1994), the court allowed the plaintiffs to go forward with claims against various state actors for abuse of process, malicious prosecution, and other torts based on their conduct in securing the emergency suspension of a daycare facility's license. The plaintiffs alleged they had already prevailed in an agency proceeding to restore the license, so there was no KJRA appeal incorporated with their Chapter 60 action. Apart from that inapt authority, the majority invokes a canine simile for support, likening Travelers' hybrid petition to a dog that can be simultaneously

26

afflicted with ticks and fleas. When it comes to dual afflictions, a legal argument may be both irrelevant and wrong.

Most significantly here, a petition for review of an agency action under the KJRA is not an independent original legal proceeding; it is an appeal, in a judicial forum, of an administrative rule or order. See *Lindenman v. Umscheid,* 255 Kan. 610, 619, 875 P.2d 964 (1994) (recognizing judicial review under the KJRA as a "'[f]orm of appeal from an administrative body to the courts for review of either the findings of fact, or of law, or of both'") (quoting Black's Law Dictionary 849 [6th ed. 1990]); see also *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017) (district court ruling in KJRA action reviewed "'as though the appeal had been made directly to'" the appellate court); *Coma Corp. v. Kansas Dept. of Labor*, 283 Kan. 625, 628, 154 P.3d 1080 (2007) (same). Judicial review under the KJRA typically is confined to the agency record, and the grounds for granting relief are statutorily limited. See K.S.A. 77-618 (judicial review limited to agency record); K.S.A. 77-619(a) (narrow bases for court to receive evidence outside agency record); K.S.A. 77-621(c) (grounds for relief from agency action). In short, judicial review of an agency order entails a limited examination of a final decision entered on a full record compiled in an administrative proceeding. Those are marked differences from an original Chapter 60 action in which the plaintiff brings an unadjudicated claim for initial determination. The parties may freely engage in discovery and motion practice leading to a judgment.

Likewise, a Chapter 60 petition differs in content and purpose from a petition for review under the KJRA. See K.S.A. 2020 Supp. 60-208; K.S.A. 77-614. A Chapter 60 petition need only contain "[a] short and plain statement of the claim" coupled with a demand for relief. K.S.A. 2020 Supp. 60-208(a). Conversely, a petition under the KJRA must contain a recitation of facts demonstrating an entitlement to relief, "reasons" relief should be granted, and a specific description of the type and extent of relief sought. K.S.A. 77-614(b). The exceptional detail makes sense, since the KJRA petition triggers

27

judicial review of a fully adjudicated agency action in an appellate-style examination of an administrative order on a fixed record.

Assuming an appeal under the KJRA can be combined with an original Chapter 60 action in a single initial filing with a district court, the amalgamated proceeding cannot and does not alter the statutory grounds for setting aside an agency action in K.S.A. 77-621(c) or the forms of relief under K.S.A. 77-622(b) and (d). In a joint filing like Travelers', the district court should first consider the KJRA appeal and defer any ruling on a petition for mandamus or prohibition as an extraordinary remedy. (The same would be true if they were filed as separate proceedings; the district court hearing the Chapter 60 action for mandamus would properly stay that proceeding pending the resolution of the KJRA appeal, whether in that district court or another district court.)

The district court effectively did that in *Travelers I*. It found it did not have authority to consider a KJRA appeal from an agency action by the director of workers compensation. And the district court then weighed and rejected Travelers' request for an order in prohibition blocking the director's order and reimbursement decision. Travelers appealed both of those rulings in *Travelers I*.

An appellate court owes no deference to the district court's ruling in a KJRA appeal and should examine the issues as if the petition had been originally filed in the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010); *Yeasin v. University of Kansas*, 51 Kan. App. 2d 939, 947, 360 P.3d 423 (2015). The panel in *Travelers I* concluded the district court incorrectly determined it could not review the director's order under the KJRA—a conclusion the majority does not dispute for purposes of this appeal. The panel then held K.S.A. 2020 Supp. 44-556(e) gave the Board rather than the director the statutory authority to decide the substantive dispute between Travelers and OneBeacon. *Travelers I*, 56 Kan. App. 2d at 397. So, as I have explained, *Travelers I* remanded the dispute to the Board, and the Board duly issued an

28

order in favor of OneBeacon—or at least it had until today with the majority's decision erasing that ruling for some amorphous lack of jurisdiction. Having found the director overstepped his statutory authority and having remanded to the agency for further proceedings, *Travelers I* declined to substantively consider the district court's denial of Travelers' request for an order in mandamus or prohibition in the Chapter 60 action.[2]

[2]For some reason, the majority devotes pages to outlining the district court's analysis of Travelers' Chapter 60 action to the effect the director's substantive resolution of the dispute in OneBeacon's favor was not arbitrary, capricious, or otherwise so obviously at odds with the law as to warrant extraordinary relief. The discussion is rather beside the point. The director may have correctly determined that Travelers was obligated to reimburse OneBeacon; the Board has now come to the same conclusion. The panel in *Travelers I* never suggested otherwise and did not remand the KJRA appeal because the director's assessment of the substantive dispute was wrong. The panel returned the matter to the agency because the director lacked the statutory authority to decide the issue at all under K.S.A. 2020 Supp. 44-556(e). See K.S.A. 77-621(c)(4) (court may grant relief if "the agency has erroneously interpreted or applied the law"); K.S.A. 77-621(c)(5) (court may grant relief if "the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure").

## III.

The majority has advanced a series of arguments supporting Travelers' claim the Board lacked jurisdiction. I turn to those now.

• The majority incorrectly characterizes what Travelers filed in the Shawnee County District Court challenging the director's order and reimbursement certification as an original Chapter 60 action. Travelers has promoted that misrepresentation as a cornerstone of its jurisdictional argument. But as I have already explained, Travelers filed a procedurally dubious mashup combining an administrative appeal of an agency action under the KJRA with an original Chapter 60 action for an order in mandamus or prohibition. They are entirely separate legal vehicles that must be considered independently of each other. The majority compounds its mistake by suggesting Travelers was not seeking review of a Board decision, as such, in *Travelers I*. While

29

that's true, it doesn't somehow negate the KJRA appeal of the director's order as an agency action.

The majority later buys a related and equally miscast argument Travelers has advanced: The *Travelers I* panel could remand only to the district court because that's where the case began. As to the Chapter 60 action for mandamus or prohibition, that's correct. If *Travelers I* had concluded the district court erred in denying an order for mandamus or prohibition, the panel should have remanded to the district court with directions to issue an appropriate order. But the panel never reached the Chapter 60 action because it found the KJRA applied and provided a mechanism for resolving the insurance carriers' dispute over the legal responsibility for Barker's benefits. Under K.S.A. 77-622(b), the panel properly returned the KJRA appeal to the agency for resolution.

The majority relies on Travelers' citation of the definition of "remand" drawn from Black's Law Dictionary 1547 (11th ed. 2019) as "[t]he act or an instance of sending something (such as a case, claim, or person) back for further action." But, of course, the definition encompasses a court returning an administrative order to the agency, especially in conformity with a statute like K.S.A. 77-622(b) permitting that precise course of action. In turn, both Travelers and the majority try to plug that hole in the argument with a quote from the Nebraska Court of Appeals to the effect that a "'remand'" entails "returning a proceeding to the court from which the appeal originated for further action." *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 83, 837 N.W.2d 553 (2013). In that case, the Nebraska Court of Appeals was discussing the mandate rule in the context of a paternity action it had sent back to the district court to reassess the amount of child support. The court did not presume to comment on the judicial treatment of administrative appeals and most certainly did not endeavor to construe the KJRA. This line of argument highlights the sort of legal fast shuffle permeating Travelers' position on jurisdiction.

30

• The majority suggests that K.S.A. 77-622(b) doesn't apply here because the director issued the contested order and *Travelers I* remanded to the Board. In doing so, the majority holds that the director and the Board constitute separate agencies under the KJRA, thereby divesting this court of authority to remand to the agency. But the governing statutory definitions bely that reasoning. Moreover, the "agency" here is the Division of Workers Compensation.

Under K.S.A. 77-602(a), an "agency" for purposes of the KJRA is defined as "a state agency," and, in turn, K.S.A. 77-602(k) broadly defines "state agency" as "any officer, department, bureau, division, board, authority, agency, commission or institution of this state." So the Division of Workers Compensation is an agency. Indeed, in its petition for judicial review under the KJRA, Travelers identified the Division as the agency. See K.S.A. 77-614(b)(1) (KJRA petition "shall set forth . . . the name and mailing address of the agency whose action is at issue").

But the majority—without any supporting legal authority—misconstrues the definition of "state agency." The purpose of the statutory definition is to bring the widest range of decision-making within the KJRA and to avoid inadvertently excluding some decision-maker within an executive department, division, or other entity. See *Heiland*, 270 Kan. at 668 (KJRA "applies to all agencies and all proceedings for judicial review" and "establishes the exclusive means of judicial review"). To that end, the governmental entities and positions identified in the definition of "state agency" are not mutually exclusive but pyramiding or interlocking to assure the KJRA's broad application. Construed that way, the definition effectuates the legislative directive in K.S.A. 77-603(a) that the KJRA governs "all agencies and all proceedings for judicial review . . . of agency actions not specifically exempted by statute from the provisions of this act." No statutory exemption has been extended to the Division of Workers Compensation, the director, or the Board.

31

In effect, the majority performs something like a judicial vivisection of the Division as a state agency when it carves out the director and the Board as independent agencies for jurisdictional purposes or for remand under K.S.A. 77-622(a). By doing so, the majority fragments the Division and presumably other executive departments and divisions into multiple jurisdictional fiefdoms. The result confounds the statutory language and the legislative purpose of the KJRA outlined in both K.S.A. 77-602 and K.S.A. 77-603.

The Division may be an unusual agency in that two principals—the director and the Board—have spheres of decision-making authority. For example, the director promulgates administrative rules and regulations for the agency. K.S.A. 44-573. The adoption of those procedures constitutes an agency action. See K.S.A. 77-602(b)(1) ("agency action" includes "a rule and regulation or an order"). The director also sets and biennially updates a schedule of maximum fees for medical treatment and other services provided to injured workers and otherwise performs administrative duties, such as receiving claims for benefits and assigning them to administrative law judges. K.S.A. 2020 Supp. 44-510i(c) (reimbursement schedule); K.S.A. 2020 Supp. 44-534(a) (receipt and assignment of claims). The Board is charged with reviewing determinations of administrative law judges awarding or denying benefits to injured workers and deciding ancillary matters, such as reimbursement requests from insurance carriers. K.S.A. 2020 Supp. 44-556(e). The Board's orders are agency actions.

When it comes to disputes among insurance carriers over their legal responsibility for benefits properly paid injured workers—the situation we have here—K.S.A. 2020 Supp. 44-556(e) allocates authority and divides duties between the Board and the director within the agency. As I have explained, the Board has the responsibility for substantively examining the circumstances of the particular claim and determining which carrier owes what. And that is an action of the Division, as an agency, subject to review under the KJRA. Based on the Board's determination, the director then issues a certificate of

32

payment identifying the amount to be reimbursed and who is to pay whom. That is not an agency action, since it is simply a ministerial and mechanical implementation of the Board's substantive decision. See K.S.A. 77-602(e) (an order, as an agency action, "determines the legal rights, duties, . . . or other legal interests of one or more specific persons").

Allocating the substantive decision-making to the Board makes sense, since the obligations of the insurance carriers presumably will be closely tied to the circumstances of the injured worker's underlying claim and the benefits awarded. Here, for example, Barker's claim arose from a repetitive use injury for carpal tunnel syndrome she suffered while working as a legal secretary; the injury spanned a considerable time, required serial treatments of limited effectiveness, and involved two employers with several insurance carriers. Arcane and somewhat artificial rules governed Barker's repetitive use injuries. See *Barker v. Grace, Unruh & Pratt*, No. 108,223, 2013 WL 5187413, at *5 (Kan. App. 2013) (unpublished opinion). Sorting out the legal obligations for those benefits was not a simple task, and K.S.A. 2020 Supp. 44-556(e) entrusts that task within the agency to the Board.

The panel in *Travelers I* properly remanded the reimbursement dispute to the Division, as the agency, and directed that the Board, as the statutory decision-maker under K.S.A. 2020 Supp. 44-556(e), review and resolve the substantive disagreement. The Board has done so, consistent with the judicial remand authority conferred in K.S.A. 77-622(b).

The majority tries to bolster its position by suggesting there was no extant workers compensation case because the benefits due Barker had been determined and were no longer subject to any legal challenge. But the suggestion misses the mark. Although the benefits had been paid and were effectively beyond contest, the workers compensation case had not been concluded precisely because the insurance carriers were disputing their

respective responsibilities for those benefits. The dispute may have been ancillary to Barker's claim for benefits, and she had no legal interest in which party ultimately covered those benefits. But the residual disagreement between the insurance carriers presented an issue to be decided within the workers compensation case. It was not a freestanding administrative proceeding. The director, thus, entered his order in the workers compensation case, and both Travelers and OneBeacon identified their letter briefs as being submitted in the case. So there remained an active workers compensation case.

• The majority makes multiple references to *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 104 P.3d 378 (2005), as if it were supporting authority. To the extent *Schmidtlien Electric* is relevant here, it lends backing to *Travelers I*. The dispute in *Schmidtlien Electric* centered on K.S.A. 44-534a(b), a different reimbursement statute. Under K.S.A. 44-534a(b), an insurance carrier or employer providing benefits to an injured worker during the pendency of a compensation claim is entitled to reimbursement from the Fund if an administrative law judge or the Board later determines the worker was not legally entitled to the benefits. Upon that determination, the director is to issue a certificate of reimbursement to the commissioner of insurance who, in turn, reimburses the employer or insurance carrier from the Fund.

In *Schmidtlien Electric*, the court considered two workers compensation claims in which administrative law judges made preliminary awards of benefits. In one case, an administrative law judge later entered a final order denying the claim upon an agreed submission of the parties that the worker did not timely prosecute the claim. The worker also agreed the injury did not occur in the scope or course of her employment. The dismissal order included the dollar amount of preliminary benefits the worker received. In the other case, an administrative law judge entered an order dismissing the claim, finding that the worker had abandoned it. That dismissal order specified the preliminary

34

benefits paid the worker. The director (one of Karns' predecessors) refused to issue certificates of reimbursement in both instances.

The court held that the director performs a ministerial, nondiscretionary function in issuing a certificate of reimbursement under K.S.A. 44-534a(b) precisely because an administrative law judge or the Board has found that specifically identified preliminary benefits were erroneously paid to the claimant. 278 Kan. at 833 ("Since the ALJs in both matters found that compensation should be totally disallowed, [the director's] statutory duty to certify these claims for reimbursement is clear."). The director had no authority to do otherwise in that circumstance. 278 Kan at 833 (director lacked statutory basis to reverse ALJ and disallow reimbursement claims under K.S.A. 44-534a[b]). The insurance carriers, therefore, could bring mandamus actions under Chapter 60 to compel the director to perform that ministerial function. Conversely, a properly executed certificate of reimbursement entails no exercise of discretion and cannot be appealed. The reimbursement process in K.S.A. 2020 Supp. 44-556(e) is comparable in the sense that an administrative law judge or the Board is to resolve the substantive dispute between the insurance carriers and the director is then limited to a ministerial duty in certifying any reimbursement. Karns exceeded the ministerial role assigned the director in that process. In those respects, *Schmidtlien Electric* is consistent with *Travelers I*, and nothing in the decision undermines *Travelers I*.

• The majority finally posits in a single paragraph that the Board lacked subject matter jurisdiction to decide the dispute between Travelers and OneBeacon on remand. The majority recites the general principle that an order or judgment issued by a court (or presumably by an administrative agency) without subject matter jurisdiction is void. But the majority doesn't explain why the rule applies here. The Division of Workers Compensation, as the administrative agency, plainly has the statutory authority (and duty) to settle the kind of dispute that has arisen between Travelers and OneBeacon. That authority translates into subject matter jurisdiction. See *Rodewald v. Kansas Dept. of*

35

*Revenue*, 296 Kan. 1022, 1038, 297 P.3d 281 (2013) (Kansas Department of Revenue, as administrative agency, "must derive its subject matter jurisdiction from statutory authority").

In K.S.A. 2020 Supp. 44-556(e), the Legislature conferred jurisdiction on the agency and bifurcated the processing of the reimbursement disputes or claims between the Board and the director. As I have said, the Board holds the authority within the agency to settle those substantive disputes, and the director has a ministerial duty to implement the resolution through a reimbursement certification. The intra-agency division of legal responsibility between the Board and the director entails the mechanism for dispute resolution or a claims-processing rule rather than the grant of subject matter jurisdiction to the agency. See *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 81-82, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009); *Cebollero-Bertran v. Puerto Rico Aqueduct and Sewer Authority*, 4 F.4th 63, 70-71 (1st Cir. 2021). That's particularly true in the sense OneBeacon initially requested reimbursement with a letter to the director rather than a motion to the Board. OneBeacon simply followed the wrong procedure to present its claim to the agency.

Accordingly, contrary to the majority's suggestion, even if *Travelers I* misallocated the intra-agency authority of the Board and the director under K.S.A. 2020 Supp. 44-556(e)—meaning OneBeacon did the right thing in submitting the reimbursement request to the director—the Division was never deprived of its subject matter jurisdiction over the dispute between Travelers and OneBeacon. In turn, the allocation of authority set out in *Travelers I* became law of the case for this matter even if it were otherwise erroneous. See *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998); *Garetson Brothers v. American Warrior, Inc.*, 56 Kan. App. 2d 623, 650-51, 435 P.3d 1153 (2019). Although legally irrelevant to the application of law of the case, Travelers has little room to complain now since it chose not to ask the Kansas Supreme Court to review *Travelers I*. And similarly irrelevant, I (not surprisingly) see no error in

how *Travelers I* applied K.S.A. 2020 Supp. 44-556(e). Regardless, the Division had and has subject matter jurisdiction.

IV.

Along the way, the majority has added color to its analytical pastiche by invoking train wrecks ("the case went off the rails" with *Travelers I*), jurisdictional icebergs ("[w]e must examine the iceberg before us"), and unfortunate canines (dogs hosting fleas and ticks). Slip op. at 10, 14, 16. So I close with some color, as well. Travelers' jurisdictional argument and the majority's endorsement of it amount to Shakespearian "sound and fury, signifying nothing." Shakespeare, *Macbeth*, Act 5, scene 5 (available online at numerous sites, e.g., shakespeare.mit.edu/macbeth/full.html). I would reject the jurisdictional argument and move on to the other points Travelers has offered for casting aside the Board's determination that it should reimburse OneBeacon.